# United States Court of Appeals
## For the First Circuit

No. 09-2431

ALEX HOLMES,

Petitioner, Appellant,

v.

LEWIS SPENCER, MARTHA COAKLEY,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Lipez, and Howard,
Circuit Judges.

Janet Hetherwick Pumphrey for petitioner.
Anne M. Thomas, Assistant Attorney General, Criminal Bureau,
with whom Martha Coakley, Attorney General, was on brief for
respondents.

July 16, 2012

**TORRUELLA, <u>Circuit Judge</u>.** Petitioner-Appellant Alex Holmes ("Holmes") filed a federal petition for a writ of habeas corpus to challenge his conviction and sentence for murder in Massachusetts. The district court dismissed Holmes's petition as untimely under the Antiterrorism and Effective Death Penalty Act's ("AEDPA") one-year statute of limitations. 28 U.S.C. § 2244(d). Holmes appealed the dismissal of his petition. We agree with the district court that Holmes's petition was not timely filed under AEDPA. However, we remand to the district court to consider whether the statute of limitations should be equitably tolled.

## I. **Background**

The Commonwealth of Massachusetts charged Holmes and two other defendants with first-degree murder in the death of Todd Richardson ("Richardson"). Holmes pled not guilty to the first-degree murder charge. However, on May 1, 1998, Holmes pled guilty to second-degree murder. The court sentenced Holmes to life in prison, the mandatory sentence in Massachusetts for second-degree murder. <u>See</u> Mass. Gen. Laws ch. 265, § 2. Holmes claims that he pled guilty because his trial counsel, Stewart Graham, Jr. ("Graham"), told him that the prosecutor had proposed a deal: if Holmes pled guilty to second-degree murder and <u>if</u> the prosecutor decided that she wanted information from Holmes regarding others who may have been involved in Richardson's killing, Holmes would be

able to reduce his sentence by filing a Motion to Revise or Revoke under Mass. R. Crim. P. 29 ("Rule 29").

After his sentencing, Holmes was sent to the Massachusetts Correctional Institution at Concord, MA ("MCI-Concord").  While there, on June 17, 1998, Holmes filed a Motion to Revise or Revoke Sentence pursuant to Rule 29 (the "Rule 29 Motion").  The Rule 29 Motion did not identify any underlying grounds; instead, it simply stated that "the defendant attaches an Affidavit in Support of this motion and reserves the right to file a supplemental affidavit, through appointed counsel, when a court hearing is requested."  The Affidavit that Holmes submitted with his Rule 29 Motion was similarly lacking in detail.  The Affidavit simply stated that Holmes wished "to preserve any and all rights due me under the Massachusetts Rules of Criminal Procedure."  It also stated, "[a]t the appropriate time, through counsel or upon my own motion, I will request that this matter be brought forward and heard by the sentencing judge."

Both the Motion and the accompanying Affidavit appear to be boilerplate forms.  Both are typewritten documents with spaces in which information is to be filled in by hand.  The Motion contains spaces in which Holmes hand-wrote his name, the docket number, the court in which he was sentenced, the date of sentence, and the date he filed the Motion itself.  The Affidavit contains spaces for the same information plus the underlying charge and the

sentence. The record does not reflect who gave the forms to Holmes, what information was given to Holmes, or what information was even available to him regarding the forms. Holmes's Reply Brief to this Court states that in 1998, all newly-sentenced prisoners were given these forms when they arrived at MCI-Concord; however, there is no evidence in the record, other than the forms themselves, regarding this issue.

Holmes never requested that the Rule 29 Motion be brought forward for a hearing in front of the sentencing judge. Moreover, as it turns out, Holmes's Rule 29 Motion was futile. Because second-degree murder carries a mandatory life sentence, the trial judge had no discretion in sentencing, and thus had no authority to revise or revoke Holmes's sentence. See Commonwealth v. Cowan, 664 N.E.2d 425, 427 (Mass. 1996). Similarly, Holmes's anticipated post-sentencing cooperation with the government could not serve as a basis for his Rule 29 Motion. See Commonwealth v. Barclay, 676 N.E.2d 1127, 1129 (Mass. 1997) (observing that Massachusetts law prohibits the consideration of post-sentencing conduct when ruling on a motion to revise or revoke).

Holmes claims that in June of 2000, through his research in the prison law library,[1] he learned of the futility of his Rule

---

[1] It is not clear which prison Holmes was in when he learned this. He is presently serving his life sentence at the Massachusetts Correctional Institution at Cedar Junction ("MCI-Cedar Junction"), but the record does not indicate when Holmes was transferred there from MCI-Concord.

-4-

29 Motion. On August 14, 2000, Holmes filed <u>pro se</u> a separate motion to withdraw his guilty plea and obtain a new trial, alleging that Graham was constitutionally ineffective. <u>See</u> Mass. R. Crim. P. 30 ("Rule 30"). Holmes claims that his discovery of the futility of his Rule 29 Motion is what prompted him to file his Rule 30 Motion.

On May 11, 2003, Graham sent a letter to Holmes in response to letters Holmes had sent him on December 31, 2002 and April 28, 2003. Graham confirmed that during plea negotiations, Holmes and Graham discussed with the prosecutor the possibility of filing a motion to revise and revoke if the prosecutor decided she wanted information from Holmes. However, Graham denied that Holmes accepted the plea deal solely on the basis of this possibility; rather, Graham said he had advised Holmes to accept the plea to second-degree murder regardless of whether the prosecutor wanted information because Holmes was "facing a significant risk of a first degree murder conviction." In addition, Graham said that he had been "neither optimistic nor pessimistic regarding the revise and revoke," and that he had "reported it to [Holmes] as a possibility mentioned by the prosecutor."

Holmes wrote back to Graham on June 14, 2003, insisting that Graham had "assured" him that the judge would grant the motion to revise and revoke if the prosecutor wanted information from Holmes regarding Nakia Mitchell ("Mitchell"), another possible

suspect in Richardson's killing.  In response, on August 25, 2003, Graham denied that he had "assured" Holmes that the judge would grant a motion to revise and revoke.  Graham also reiterated that there was never any commitment from the prosecutor to use Holmes's information about Mitchell.  "Since she [the prosecutor] decided not to proceed," Graham wrote, "there was not and is not any possibility of filing [a motion to revise or revoke]."  "Therefore," Graham continued, "whether a judge would or would not have allowed such a motion is a moot point."

On August 4, 2004, Holmes filed an Amended Motion to Withdraw Guilty Plea and for a New Trial.  This amended Rule 30 Motion included the claim that Holmes would not have pled guilty had he known that the Rule 29 Motion would have been futile.  After successive denials of the Rule 30 motion by the trial court, the intermediate appellate court, and the Supreme Judicial Court ("SJC"), the SJC denied Holmes's final petition for reconsideration on September 11, 2007.

On April 9, 2008, Holmes filed a pro se petition for a writ of habeas corpus in the U.S. District Court for the District of Massachusetts pursuant to 28 U.S.C. § 2254.  Holmes raised four claims of ineffective assistance of counsel.  Ground One of Holmes's petition was that he was induced to plead guilty based on Graham's faulty assurance that Holmes would be able to reduce his sentence via a Rule 29 motion.  Grounds Two through Four raised

various complaints about alleged deficiencies in Graham's pre-trial strategy and his investigation of the case. Respondents Luis Spencer, Superintendent of MCI-Cedar Junction, and Martha Coakley, Attorney General of Massachusetts (collectively, "Respondents"), moved to dismiss Holmes's petition on the ground that it was untimely under AEDPA.

AEDPA imposes a one-year statute of limitations on federal habeas petitions filed by state prisoners. See 28 U.S.C. § 2244(d)(1). That one-year period commences when the petitioner's conviction becomes final (or when the petitioner could have reasonably discovered the factual basis for his habeas claim, whichever occurs later), but excludes, inter alia, any time during which he has an application for collateral review pending before the state courts. Id. at § 2244(d)(1), (2). Respondents contended that Holmes's Rule 30 motion did not save Holmes's habeas corpus petition from untimeliness because Holmes filed the Rule 30 motion after AEDPA's one-year limitations period had already expired.

In opposition to Respondents' motion, Holmes argued that his Rule 29 Motion, filed on June 17, 1998 (less than two months after his guilty plea), tolled the AEDPA statute of limitations. Holmes also argued that the statute of limitations should be equitably tolled because the state trial court never ruled on his Rule 29 Motion. In response to Holmes's opposition, Respondents filed a Reply Memorandum in support of their motion to dismiss.

Respondents argued that the Rule 29 Motion did not toll the statute of limitations. In support of this position, Respondents cited to cases from the District of Massachusetts that held that a Rule 29 motion was not a motion seeking "post-conviction or collateral review" as required by 28 U.S.C. § 2244(d)(2). See, e.g., Phillips v. Spencer, 477 F. Supp. 2d 306, 310 (D. Mass. 2007). Respondents also argued that the statute of limitations should not be equitably tolled.

On October 1, 2008, the district court denied Respondents' motion to dismiss. The court noted that under 28 U.S.C. § 2244(d)(1)(D), the one-year statute of limitations under AEDPA may begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The court held that there was a factual question regarding when Holmes could have discovered Graham's alleged mistake regarding the Rule 29 Motion. The court then held that dismissal would be inappropriate until this question was resolved. The court did not address Holmes's Rule 29 or equitable tolling arguments.

Respondents filed a Renewed Motion to Dismiss on February 6, 2009. First, Respondents contended that Holmes's attempt to rely on § 2244(d)(1)(D) to toll the statute of limitations only applied to Ground One of his petition, which was the claim that Graham provided ineffective assistance by suggesting

the Rule 29 Motion. Respondents argued that Grounds Two through Four, which all related to complaints about Graham's assistance before the plea agreement, were time-barred regardless of whether Ground One was timely or not. As to the timeliness of Ground One, Respondents argued that Holmes's discovery of Graham's alleged error regarding the possibility of a Rule 29 motion was not the "factual predicate" giving rise to Holmes's claim for the purposes of § 2244(d)(1)(D); rather, Respondents argued that the alleged deal with the prosecutor was the factual predicate for the claim. Therefore, Respondents argued, since Holmes knew of the deal as of May 1, 1998 (the date he pled guilty), the statute of limitations would still have expired on May 1, 1999.

Respondents further argued that even if the impossibility of the Rule 29 motion was the "factual predicate" for § 2244(d)(1)(D) purposes, Holmes failed to show that he could not have "discovered" this fact "through the exercise of due diligence" before the summer of 2000. Respondents noted that when Holmes filed his Rule 29 motion on June 17, 1998, he stated that at some later date he would request a hearing in front of the sentencing judge. However, Holmes never requested a hearing and never explained why he did not do so. Respondents argued that had Holmes requested a hearing, he would have learned that his motion was futile. Moreover, Respondents contended that Holmes did not adequately explain why it took so long to discover the

impossibility of a Rule 29 Motion through his own research in the library.

Holmes, now represented by counsel, filed an Opposition to the Renewed Motion to Dismiss on March 5, 2009. In his Opposition, Holmes argued that the fact of the impossibility of the Rule 29 Motion was the "factual predicate" for his claim, and argued that he could not have discovered this fact until the summer of 2000. Holmes also argued that the statute of limitations should be equitably tolled due to Graham's alleged ineffective assistance and because Holmes was trying to pursue his claims while incarcerated. Finally, Holmes argued that as long as at least one claim in his habeas corpus petition was timely, his entire petition was timely. Holmes did not renew his argument that the Rule 29 Motion tolled the statute of limitations.

The district court granted the Renewed Motion to Dismiss on September 16, 2009. The court held that Holmes failed to show that his claim regarding his discovery of Graham's error accrued in 2000. The court also held that Graham's claims under Grounds Two through Four were time-barred. The court did not reach the question of whether the timeliness of the petition should be determined on a claim-by-claim basis. The district court granted a Certificate of Appealability ("COA"), see 28 U.S.C. § 2253(c), and this appeal followed.

After Holmes filed his appeal, this Court issued its decision in Kholi v. Wall, in which we concluded "that the filing of a state post-conviction motion to reduce an imposed sentence, in the nature of a plea for discretionary leniency, tolls the AEDPA's limitations period." 582 F.3d 147, 149 (1st Cir. 2009). Therefore, this Court ordered the appointment of counsel for Holmes and directed the parties to brief the question of whether, under Kholi, Holmes's Rule 29 Motion tolled the limitations period. Later, while this case was still pending, the Supreme Court upheld this court's decision in Kholi. See Wall v. Kholi, 131 S. Ct. 1278 (2011).

## II.  Discussion

For purposes of this appeal, the parties agree that Holmes's conviction became final on May 1, 1998. They also agree that his Rule 30 Motion qualified as an application for collateral review, thereby excluding the interval between August 14, 2000 and September 11, 2007 from AEDPA's one-year calculus.[2] See 28 U.S.C.

---

[2]  For the reader's convenience, we set forth here a chronology of the relevant dates:

May 1, 1998: Petitioner pleads guilty and is sentenced to life imprisonment.

June 17, 1998: Rule 29 motion to revise or revoke filed in the trial court.

August 14, 2000: Rule 30 motion to withdraw guilty plea and obtain a new trial filed in the trial court.

September 11, 2007: After a succession of timely appeals, the SJC

-11-

§ 2244(d)(1), (2).  The timeliness of Holmes's federal habeas petition, then, hinges on whether there are any grounds for excluding at least twenty-two of the remaining thirty-four unaccounted months between May 1, 1998 and April 9, 2008.  Holmes proposes two such bases under the provisions of AEDPA itself:  (1) that the limitation period did not even begin to run until August of 2000, when he discovered the purported factual basis for his primary habeas claim, <u>viz.</u>, that his trial attorney's Rule 29 advice was erroneous; and (2) that the statute of limitations was tolled while his Rule 29 Motion was pending.  In the alternative, Holmes argues that the statute of limitations should be equitably tolled.  We analyze these arguments in turn.

## A.  Scope of Issues on Appeal

Before proceeding to the substance of this case, we first clarify which issues are properly before this Court.  Under 28 U.S.C. § 2253(c), there can be no appeal from a final order in a federal habeas corpus proceeding challenging a state court action unless either the district court judge or a judge on a Court of Appeals issues a COA.  The COA must identify the issues to be appealed.  28 U.S.C. § 2253(c)(3).[3]  "The general rule is that 'a

denies the final petition for reconsideration of the Rule 30 motion, thereby exhausting the petitioner's state remedies.

<u>April 9, 2008</u>: Petition for federal habeas relief filed.

[3]    "[W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

-12-

court of appeals should not consider the merits of an issue advanced by a habeas petitioner unless a COA first has been obtained with respect to that issue.'" Peralta v. United States, 597 F.3d 74, 83 (1st Cir. 2010) (emphasis in original) (quoting Bui v. DiPaolo, 170 F.3d 232, 237 (1st Cir. 1999)). However, this Court has the discretion to expand the scope of the COA sua sponte, particularly for an issue the parties have adequately briefed. See Joost v. United States, 226 F. App'x 12, 12 (1st Cir. 2007) (expanding the scope of the COA sua sponte to affirm on the basis of the merits of a claim where the COA was initially granted solely to determine the timeliness of petitioner's habeas petition) (citing Villot v. Varner, 373 F.3d 327, 337 n.13 (3d Cir. 2004)).

Here, the district court granted a COA identifying two issues. The first is "whether the statutory impossibility of the [Rule 29 Motion] should be decisive" of the timeliness question. Thus, the question of whether Holmes's discovery of Graham's alleged error in 2000 is a "factual predicate" for the purposes of the AEDPA statute of limitations is properly before this Court. The second issue on which the district court granted a COA is

_____

constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 478 (2000).

-13-

whether the timeliness of Holmes's petition should be determined on a claim-by-claim basis.

Furthermore, as noted above, after Holmes filed his appeal, this Court directed the parties to brief the question of whether, under Kholi, the Rule 29 Motion tolled the limitations period. Thus, that issue is properly before this Court, even though it was not mentioned in the COA. Finally, the question of whether a statute of limitations should be equitably tolled is fundamentally intertwined with the question of timeliness. See, e.g., Sistrunk v. Rozum, 674 F.3d 181, 184, 189-92 (3d Cir. 2012) (considering a habeas petitioner's equitable tolling argument where the COA limited review to "whether [the petitioner's] habeas petition was timely filed according to 28 U.S.C. § 2244(d)(1)(D)"); Humphreys v. United States, 238 F. App'x 134, 138 (6th Cir. 2007) (suggesting that several courts have held that the use of the words "equitable tolling" in the COA does not preclude the consideration of a habeas petitioner's timeliness arguments). Thus, this Court is free to consider whether the AEDPA statute of limitations should be tolled in this case.

## B.  Application of Statute of Limitations

"Where, as here, the district court has denied a habeas petition on a procedural ground without taking evidence, we afford de novo review." Wood v. Spencer, 487 F.3d 1, 3 (1st Cir. 2007).

## 1. Discovery of Factual Predicate

Under 28 U.S.C. § 2244(d)(1), the statute of limitations runs from the "latest" of several specified dates. One such date is "the date on which the factual predicate of the [habeas claim] could have been discovered through the exercise of due diligence." Id. § 2244(d)(1)(D). Holmes argues that the factual predicate for his primary ineffective assistance of counsel claim is the "fact" that the alleged deal with the prosecutor regarding the Rule 29 Motion was precluded as a matter of law. Further, he argues that he could not have discovered this fact through the exercise of due diligence until the summer of 2000. Thus, Holmes argues, the statute of limitations on his habeas claim did not even start to run until he filed his Rule 30 Motion in August of 2000.

However, Holmes's argument misconstrues the language of the statute. We have interpreted § 2244(d)(1)(D)'s reference to the phrase "factual predicate" to mean "evidentiary facts or events[,] and not court rulings or legal consequences of the facts." Brackett v. United States, 270 F.3d 60, 69 (1st Cir. 2001), abrogated on other grounds by Johnson v. United States, 544 U.S. 295 (2005). Here, Holmes claims that Graham's strategy to enter a guilty plea and file a Rule 29 motion was constitutionally deficient. The principal facts upon which this claim is predicated -- that Holmes originally intended to go to trial; that his attorney instead convinced him to plead guilty; and that this

-15-

course of action was influenced by his expectation of a subsequent sentence reduction -- were known, at the latest, by the date of his conviction on May 1, 1998. That this advice may have been flawed, and could potentially form the foundation for an ineffective assistance claim, are the legal consequences of those facts -- matters of law that are beyond the purview of § 2244(d)(1)(D). See Brackett, 270 F.3d at 69; Murphy v. Strack, 9 F. App'x 71, 73 (2d Cir. 2001) (summary order) ("The factual predicates of [the petitioner's] claims are that he testified at his trial and that his attorney told him he was required to testify. . . . What [the petitioner] contends he did not know prior to 1999 was not a factual matter but rather a matter of law, i.e., his constitutional right not to testify. The latter is beyond the scope of § 2244(d)(1)(D)."); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Unlike some state systems, which start the [limitation period] only when a party knows (or should recognize) that a legal wrong has been done, [§ 2244(d)(1)(D)] use[s] objective indicators as triggers. [. . .] Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."). Thus, in all events, Holmes's discovery that his attorney's advice was allegedly misleading, while unfortunate, is ultimately unavailing under the language of § 2244(d)(1)(D).

**2. Rule 29 Motion**

As discussed above, we reject Holmes's argument that the one-year clock began to run in August of 2000. The statute of limitations thus began to run on May 1, 1998, the date Holmes's conviction became final. However, under 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under [section 2244(d)]" (emphasis added). Holmes argues that his Rule 29 Motion, like his Rule 30 Motion, was an application for collateral review, and therefore tolled the limitation period while the Rule 29 motion was pending.[4]

The threshold issue is whether a Rule 29 motion comes within the scope of AEDPA's tolling provision at all -- in other words, whether it should be characterized as an "application for State post-conviction or other collateral review." See id. At the time when the district court dismissed the habeas petition, the

---

[4] Holmes made this argument in the district court in opposition to his original motion to dismiss, but elected not to assert it in reply to the Commonwealth's renewed motion to dismiss. While it could be argued that Holmes forfeited this claim, we do not believe the circumstances warrant a finding of forfeiture here. In response to Holmes's original Rule 29 argument, Respondents cited case law from the District of Massachusetts holding that a Rule 29 motion is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2). Those cases were good law at the time. This Court revived the Rule 29 issue when it sua sponte ordered the parties to address the effect of Kholi.

prevailing precedent suggested that a motion to revise or revoke was not the type of post-conviction application for review envisioned by § 2244(d)(2), and thus would not exclude any time from the statutory limitations period.  See, e.g., Phillips, 477 F. Supp. 2d at 306 (holding that a Rule 29 motion is not a "collateral attack" under § 2244(d)(2) because it is part and parcel of the underlying proceeding in which the defendant was sentenced); Ledoux v. Dennehy, 327 F. Supp. 2d 97, 99-100 (D. Mass. 2004); Bland v. Hall, No. 00-12020-RWZ, 2002 WL 989532, at *2 (D. Mass. May 14, 2002).  Within a week of the district court's order, however, we issued Kholi v. Wall, 582 F.3d 147 (1st Cir. 2009), aff'd, Wall v. Kholi, 131 S. Ct. 1278 (2011).  In Kholi we held that "the filing of a state post-conviction motion to reduce an imposed sentence, in the nature of a plea for discretionary leniency, tolls the AEDPA's limitations period."  582 F.3d at 149; see also Wall, 131 S. Ct. at 1287 ("[A] motion to reduce sentence under Rhode Island law is an application for 'collateral review' that triggers AEDPA's tolling provision.").

Kholi concerned a provision of Rhode Island procedural law, Rhode Island Superior Court Rule of Criminal Procedure 35(a).  See Kholi, 582 F.3d at 151.  However, we see no reason why its holding should not apply with equal force here.  Indeed, we can discern no basis (nor do the parties supply one) for meaningfully

-18-

distinguishing the Massachusetts rule from the Rhode Island rule.[5]

Accordingly, we conclude that a motion to revise or revoke sentence under Massachusetts Rule of Criminal Procedure 29(a) constitutes a request for "State post-conviction or other collateral review" within the meaning of AEDPA.  See 28 U.S.C. § 2244(d)(2).

Thus, Holmes's Rule 29 Motion was a request for "State post-conviction or other collateral review" within the meaning of AEDPA.  To toll the statute of limitations, however, the motion must have been "properly filed."  Id.  In order to determine whether the motion was properly filed, we must look to Massachusetts law.  See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (holding that an application for post-conviction review is "properly filed" for § 2244(d)(2) purposes when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings").

---

[5]  For the sake of comparison, we include the pertinent language of the two rules:

Rhode Island Rule 35(a):

"The court may correct an illegal sentence at any time.  The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed. . . ."  R.I. Super. Ct. Rule Crim. Proc. 35(a).

Massachusetts Rule 29(a):

"The trial judge upon his own motion or the written motion of a defendant . . . may, upon such terms and conditions as he shall order, revise or revoke such sentence if it appears that justice may not have been done."  Mass. R. Crim. P. 29(a).

-19-

Respondents argue that Holmes's Rule 29 Motion was improper under Commonwealth v. DeJesús, in which the SJC stated that "to be properly filed, a [Rule 29] motion to revise or revoke must be accompanied by an affidavit, or otherwise indicate the grounds on which it is based." 795 N.E.2d 547, 552 (Mass. 2003) (emphasis added). Here, it is undisputed that Holmes's Rule 29 Motion and accompanying Affidavit did not specify the grounds on which the Motion was based. Therefore, Respondents argue, under DeJesús, the Rule 29 Motion was not "properly filed" and did not toll the statute of limitations. Holmes counters by noting that DeJesús, which was the first case to expressly delineate such a stringent filing requirement, was decided more than five years after he filed his Rule 29 motion. Therefore, he argues, it would be unfair to apply DeJesús retroactively to his Rule 29 Motion.

We sympathize somewhat with Holmes's argument that applying DeJesús retroactively would be unfair. Nevertheless, we must look to Massachusetts law to decide whether to apply DeJesús retroactively, see Artuz, 531 U.S. at 8, and Massachusetts law favors Respondents. Several Massachusetts courts have applied DeJesús retroactively to Rule 29 motions that were filed prior to the issuance of the DeJesús decision in 2003. See, e.g., Commonwealth v. Fenton F., 809 N.E.2d 1005, 1011 (Mass. 2004) (finding that a trial attorney's failure to file a Rule 29 motion in 1993, where he believed that no grounds existed to reduce the

defendant's sentence, was not ineffective assistance of counsel because "one cannot file a motion to revise or revoke without stating the grounds on which it is based"); Commonwealth v. Niditch, 883 N.E.2d 341, at *1 (Mass. App. Ct. 2008) (unpublished order) (noting that defendant's "perfunctory" motion to revise or revoke, filed on January 6, 1998, was improper because it was not "accompanied by an affidavit, [and did not] otherwise indicate the grounds on which it [was] based"); Commonwealth v. Glover, 823 N.E.2d 436, at *1 (Mass. App. Ct. 2005) (unpublished order) (holding that a Rule 29 motion filed prior to DeJesús was "defective in that it was not accompanied by the required affidavit as specified by [R]ule 29(b), [and] did [not] adequately state the grounds for relief in order to be considered properly filed"); see also Commonwealth v. Hernandez, 868 N.E.2d 183, at *1 (Mass. App. Ct. 2007) (unpublished order) ("The defendant argues that [R]ule 29 allows a defendant to file a revise and revoke motion and then, at some unspecified time later, to file supplemental affidavits that activate the originally filed motion. We disagree with this novel construction of [R]ule 29."). But see Commonwealth v. Oliver, 905 N.E.2d 604, at *1 (Mass. App. Ct. 2009) (unpublished order) (signaling, in dicta, a reluctance to apply the standard from DeJesús to a Rule 29 motion filed in 1999, and denying the motion on other grounds). We therefore conclude that DeJesús does apply to Holmes's Rule 29 Motion, and further conclude that, under

DeJesús, the motion was not "properly filed" for AEDPA purposes, and therefore cannot serve as a tolling mechanism under 28 U.S.C. § 2244(d)(2).

## C. Equitable Tolling

As a fallback position, Holmes maintains that the district court should have resuscitated his otherwise time-barred petition as a matter of equity. Generally, the doctrine of equitable tolling enables a court to extend a statute of limitations for equitable reasons not acknowledged in the language of the statute itself. See Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004). Its application, however, is limited to rare and exceptional cases; equitable tolling is "the exception rather than the rule . . . [and] resort to its prophylaxis is deemed justified only in extraordinary circumstances." Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (internal citation omitted). To establish a foundation for equitable tolling in the federal habeas context, a petitioner must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "We apply equitable tolling on a case-by-case basis, avoiding mechanical rules and favoring flexibility." Ortega Candelaria v. Orthobiologics LLC,

661 F.3d 675, 680 (1st Cir. 2011) (citing <u>Holland</u>, 130 S. Ct. at 2563).

We review the district court's decision to deny equitable tolling for abuse of discretion. <u>See</u> <u>Riva</u> v. <u>Ficco</u>, 615 F.3d 35, 40 (1st Cir. 2010). "Abuse of discretion is not a monolithic standard of review; within it, abstract questions of law are reviewed de novo, findings of raw fact are reviewed for clear error, and judgment calls receive a classically deferential reception." <u>Id.</u>

Holmes raises two arguments that he made in the district court in response to Respondents' Renewed Motion to Dismiss: (1) that the statute should be equitably tolled because of Graham's alleged ineffective assistance; and (2) that the statute should be equitably tolled because he was incarcerated. We reject both of these arguments. However, in light of our holding today regarding the effect of <u>Kholi</u> -- an issue that was never before the district court -- we find that there may be grounds for equitably tolling the statute of limitations due to the circumstances surrounding the filing of Holmes's Rule 29 Motion.

**1. Arguments Raised in Response to Renewed Motion to Dismiss**

Holmes first claims that "the unique and extraordinary circumstances of this case -- a plea to a life sentence based on egregiously incompetent advice of trial counsel -- require equitable intervention." This argument misapplies the relevant

standard. AEDPA's statute of limitations will not be equitably tolled merely because the underlying grounds for habeas relief are extraordinary; rather, the "extraordinary circumstance" must be one that actually caused the untimely filing. See Holland, 130 S. Ct. at 2562; Barreto-Barreto v. United States, 551 F.3d 95, 101 (1st Cir. 2008) (noting that the "extraordinary circumstances" standard focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying action). The advice given to Holmes by his counsel, regardless of its level of alleged incompetence, did not "st[an]d in his way and prevent [the] timely filing" of his habeas petition. Holland, 130 S. Ct. at 2562.

Second, Holmes contends that he is entitled to equitable tolling because he was incarcerated, had no prior legal training, and received limited access to the prison's purportedly scant selection of legal resources. These circumstances are not extraordinary. To be sure, in unusual cases, certain limitations of imprisonment may rise to the level of "extraordinary circumstance" -- for example, where a penitentiary's library does not possess the legal materials necessary to adequately pursue relief, see, e.g., Moore v. Battaglia, 476 F.3d 504, 506-08 (7th Cir. 2007) -- but such is not the case here. Holmes does not specify how the prison library's materials were inadequate, nor does he allege that they were withheld from use altogether. In

-24-

fact, he presents nothing to differentiate his conditions of imprisonment from those of any other inmate.  If we tolled AEDPA's limitation period every time a prisoner with no legal training had his library time strictly regulated, § 2244(d) might as well not exist; few prisoners are lawyers, and few prisons offer their occupants unfettered library access.   "[T]he usual problems inherent in being incarcerated do not justify equitable tolling." Baldayaque v. United States, 338 F.3d 145, 152 (2d Cir. 2003).  See also Baker v. Norris, 321 F.3d 769, 771-72 (8th Cir. 2003) (no tolling where prisoner granted only limited access to library); Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (no equitable tolling where the prisoner was acting pro se, and proclaimed himself to have been ignorant of the applicable law).

### 2. Equitable Tolling in Light of Kholi

As discussed above, see Section II(B)(2), supra, we have held, in light of Kholi, that a motion to revise or revoke a sentence under Mass. R. Crim. P. 29(a) constitutes a request for "State post-conviction or other collateral review" within the meaning of AEDPA.  See 28 U.S.C. § 2244(d)(2).  We have further held that Holmes's Rule 29 Motion was not "properly filed" for AEDPA purposes because neither the Motion nor the accompanying Affidavit specified the grounds on which the Motion was based.  If the Rule 29 Motion was not "properly filed," then the statutory tolling mechanism of § 2244(d)(2), which is triggered only by

-25-

"<u>properly filed</u> application for State post-conviction or other collateral review" (emphasis added), does not apply, and Holmes's petition is untimely.  We are troubled, however, by the possibility that at the time Holmes filed his Rule 29 Motion, he was led to believe that his Motion was in fact properly filed, even though it would later prove to have been improper.  Thus, there may be a basis in equity for excluding the time during which Holmes's Rule 29 Motion was pending from the statutory limitations period.

A Rule 29 motion must be filed within sixty days after "the imposition of a sentence . . . receipt by the trial court of a rescript issued upon affirmance of the judgment or dismissal of the appeal, . . . [or] entry of any order or judgment of an appellate court denying review of, or having the effect of upholding, a judgment of conviction."  Mass. R. Crim. P. 29(a).  Holmes claims that in 1998, when he filed his motion, the practice of filing a "placeholder" motion and affidavit to satisfy the 60-day filing deadline was standard.  He advances three arguments in support of this position.  First, Holmes contends that the practice of filing placeholder motions had been tacitly endorsed by Massachusetts courts.  Second, Holmes argues that the practice was recognized as standard among criminal defense attorneys.  Finally, he contends that prison procedures in 1998 reflected the widespread acceptance of this practice.

First, Holmes identifies two cases to support the proposition that prior to DeJesús, Massachusetts courts tacitly permitted the filing of unsupported Rule 29 motions. See Commonwealth v. McGuinness, 658 N.E.2d 150 (Mass. 1995); Commonwealth v. Bland, 724 N.E.2d 723 (Mass. App. Ct. 2000). However, each is inapposite. In McGuinness, the defendant filed a Rule 29 motion at the court's behest, for reasons proffered by the trial judge, thus obviating the need to provide any underlying grounds. 658 N.E.2d at 150-51. Even less helpful, in Bland, the defendant's motion to revise or revoke did include a substantive, albeit ultimately inadequate, foundation. 724 N.E.2d at 724 n.3. Furthermore, our own independent survey of Massachusetts cases only confirms the dearth of jurisprudential support. We found a single case, Commonwealth v. Amirault, 612 N.E.2d 631 (Mass. 1993), in which the merits of a Rule 29 motion were considered where no supporting affidavits were filed. There, however, the court acknowledged but declined to address the Commonwealth's argument that the motion was facially defective for its failure to present any basis for relief, instead disposing of the motion on alternative grounds. Id. at 633 n.6.

Holmes next contends that filing a placeholder Rule 29 motion was considered standard practice by the criminal defense bar in Massachusetts in 1998. Holmes points to the following excerpt from a 1990 edition of Massachusetts Criminal Defense:

-27-

> [S]imply file the [Rule 29] motion with a
> cover letter to the clerk indicating that the
> defendant is not requesting a hearing or any
> other action at that time. Even in cases
> where at the time of imposition of sentence
> the possibility of a subsequent reduction may
> appear extremely remote or nonexistent, <u>the
> passage of time may reveal circumstances that
> were overlooked and should have been
> considered at the time sentence was imposed</u>.

Blumenson, Fisher & Kanstroom, <u>Massachusetts Criminal Defense</u>, § 43.3D, at 44-10 (1990) (emphasis added). The 1998 edition of the same treatise notes: "The Rule 29 procedure is designed to address precisely this problem, but it is unavailable unless a timely motion is filed, and often the deadline for filing such a motion passes before the ultimate and meritorious grounds for relief are discovered." 2 Eric Blumenson, et al., <u>Massachusetts Criminal Practice</u> § 44.3C, at 547 (2d ed. 1998). The manual goes on to advise that "[w]here a defendant does not seek an immediate hearing or ruling on the motion, an affidavit is still required <u>to preserve the defendant's rights</u> under the rule. A more complete supplemental affidavit could be offered at a later time when the defendant requests hearing on the motion." <u>Id.</u> at 548 (emphasis added).

It is true that the treatise cited by Holmes does not explicitly say that a Rule 29 motion that does not list the grounds on which it is based is properly filed. However, if an affidavit is needed to "preserve the defendant's rights," <u>id.</u> at 548, but the facts underlying the motion might not be discovered until after the

-28-

60-day deadline, common sense suggests that the most prudent course of action for a prisoner was to file a placeholder Rule 29 motion and affidavit.[6]  We find that this fact lends some support to Holmes's contention that the Rule 29 Motion he filed in 1998 accorded with standard practice at the time.

Finally, Holmes claims that in 1998, all newly-sentenced prisoners were given boilerplate motions and supporting affidavits when they arrived at MCI-Concord.  Holmes points to no rule or regulation showing that this was the case; however, Holmes's Rule 29 Motion and Affidavit are in the record, and they appear to support Holmes's position.  Both the Motion and Affidavit appear to be standard forms that were given to Holmes by prison officials; both are type-written forms with spaces in which Holmes hand-wrote certain biographical information.  The Motion lists MCI-Concord as Holmes's address, with a space in which Holmes hand-wrote his cell number.  It thus seems quite likely that, as Holmes claims, prison officials provided him with these boilerplate forms.  If in fact this was the case, then Holmes may have been led to believe that his filing of a placeholder Motion and Affidavit was sufficient for Rule 29, even if it was not actually so.

------

[6]  Indeed, the 1998 edition of Massachusetts Criminal Practice stated: "In the absence of serious and substantial reasons not to file a motion [such as impossibility] . . . it is arguable that the standards for effective representation require defense counsel to file a timely motion to revise and revoke the sentence . . . ." Id. at 547.

If Holmes was led to believe in 1998 that it was standard practice to file a placeholder motion and affidavit, then he may have a plausible claim for equitable relief. Equitable tolling requires that Holmes demonstrate "that he has been pursuing his rights diligently." Holland, 130 S. Ct. at 2562 (internal quotation marks omitted). However, the diligence required for equitable tolling purposes is "'reasonable diligence,' not 'maximum feasible diligence.'" Id. at 2565 (quoting Lonchar v. Thomas, 517 U.S. 314, 326 (1996); Starns v. Andrews, 524 F.3d 612, 618 (5th Cir. 2008)). If Holmes did what he reasonably thought was necessary to preserve his rights by filing a placeholder motion, based on information he received from prison officials, then he can hardly be faulted for not acting more "diligently" than he did. It is true, as the dissent notes, that after filing his placeholder motion Holmes failed to request a hearing for over two years. However, Holmes's correspondence with Graham suggests that Holmes may have been waiting to learn whether the prosecutor wanted information from him about Mitchell. If so, Holmes's delay may not be incompatible with a showing of diligence, but that is a determination best left to the District Court to make in the first instance.

Equitable tolling also requires Holmes to show "that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted). We have

noted that equitable tolling may apply to AEDPA where a prisoner was "actively misled" in a way that caused him to miss the filing deadline.  Delaney, 264 F.3d at 15.  If in fact prison officials intentionally or inadvertently caused Holmes to believe that his filing was sufficient, this might qualify as an "extraordinary circumstance."

The Fifth Circuit addressed a somewhat similar situation in Williams v. Thaler, 400 Fed. App'x 886 (5th Cir. 2010).  There, the petitioner was repeatedly misinformed by the state court system that his state habeas petition was pending when, in fact, it had already been denied.  Id. at 887.  When the petitioner eventually learned the truth, he promptly filed a federal habeas petition, and the Fifth Circuit held that equitable tolling was appropriate.  See id. at 892-93.

Here, we cannot say what the result should be because the record does not contain sufficient facts.  There is nothing in the record to indicate what additional information, if any, Holmes was given about the filing requirements under Rule 29.  In particular, we do not know if Holmes was told the boilerplate forms he filed were sufficient for Rule 29 purposes, or if he was told that more detail was required.  The district court had no reason to consider the facts surrounding the filing of the Rule 29 Motion because prior to Kholi, the Rule 29 issue was a non-starter; even if the court had invoked equitable principles to treat the motion as

"properly filed," the motion would not have counted as a motion seeking "post-conviction or collateral review" for AEDPA purposes. Now, however, in light of our holding regarding the treatment of Rule 29 motions under Kholi, the calculus has changed.

The dissent argues that we should not consider any equitable tolling argument with respect to the Rule 29 Motion because Holmes has waived any such argument. The dissent first faults Holmes for not having argued that his Rule 29 Motion was properly filed until his reply brief. See post at 38, 43 n.8 (Howard, J., dissenting). In particular, the dissent notes that this court explicitly instructed the parties to address the effect of Kholi in their opening briefs. See post at 43 n.8. Holmes did address Kholi in his opening brief in arguing that his Rule 29 Motion was a motion seeking "post-conviction or collateral review." However, at the time Holmes filed his opening brief, the Commonwealth had never before argued that his Rule 29 Motion was not "properly filed." This argument first appeared in the Commonwealth's brief to this Court. In response, in his reply brief, Holmes argued that his Rule 29 Motion was "properly filed." Thus, Holmes raised the argument that his motion was "properly filed" at the earliest point when it was logical to do so, and it would make no sense to fault him for not having raised it sooner.

The dissent also contends that the equitable tolling argument is waived because Holmes failed to sufficiently develop

it.  See post at 38-39.  The dissent invokes the familiar rule from United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), that arguments "adverted to in a perfunctory manner [or] unaccompanied by some effort at developed argumentation" are waived.  See post at 39.  It is true that in his reply brief, Holmes never explicitly referred to "equitable tolling" or "equity" in relation to his argument that his motion was properly filed.  However, Holmes argued in his reply brief that it would be "fundamentally unfair" to retroactively apply the DeJesús decision and find that his motion was not properly filed.  We have noted that "[i]n a proper case, the doctrine of equitable tolling ensures fundamental fairness."  Morris v. Government Dev. Bank, 27 F.3d 746, 750 (1st Cir. 1994).  Thus, we have no trouble reading Holmes's argument as an appeal to equity, even though Holmes did not use the precise words "equitable tolling" or "equity."  We acknowledge that Holmes's argument relating to the boilerplate forms could have been more developed.  However, "in certain circumstances we have the discretion to overlook waiver by inadequate argument." Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2009) (citation omitted). This case is a prime candidate for an exercise of such discretion. Holmes's reply brief reveals enough of the raw materials of an equitable tolling issue that we will not ignore the issue simply because Holmes did not put the necessary label on it.

Furthermore, this is not a situation in which we need to apply the waiver rule to prevent prejudice to the Commonwealth due to lack of notice. See post at 38. As noted above, the Commonwealth first raised the issue of the impropriety of Holmes's Rule 29 Motion in its brief to this Court. The Commonwealth could hardly claim that it did not have notice that Holmes might respond to this argument in his reply brief. Cf. Walker v. Exeter Region Coop. Sch. Dist., 284 F.3d 42, 47 (1st Cir. 2002) (where appellees raised argument in opening brief, "prudence dictated that [appellants] counter with a reply brief showing that the [appellees] were wrong"). Additionally, since we are instructing Holmes to make his argument to the district court in the first instance, the Commonwealth will have ample opportunity to respond.

The dissent also suggests that a remand would be pointless because Holmes's argument has no merit. The dissent cites a number of cases in which courts have refused to apply equitable tolling in light of a prisoner's reliance on faulty advice by prison staff. See post at 44-46. However, most of the cited cases deal with faulty advice regarding a filing deadline; furthermore, in some of these cases, the record made clear that the petitioner either had access to proper information or was explicitly told not to rely on the advice offered. See Alexander v. Schriro, 312 F. App'x 972, 975 (9th Cir. 2009) (no equitable tolling where prison paralegal gave faulty advice about deadline,

-34-

and where record showed that prisoner was told that paralegals could not give legal advice); <u>Henderson</u> v. <u>Nooth</u>, No. 3:07-CV-01823-JO, 2012 WL 1801736, at *4 (D. Or. May 16, 2012) (no equitable tolling despite faulty information from prison paralegal where record showed that prisoner was given prior written notice of one-year statute of limitations); <u>Elliott</u> v. <u>Napoli</u>, No. 07-CV-3942, 2010 WL 1816406, at *2 (E.D.N.Y. May 4, 2010); <u>James</u> v. <u>Hudson</u>, No. 1:07-CV-3651, 2009 WL 111637, 11 at *8 (N.D. Oh. Jan. 15, 2009). Here, in contrast, there is no question that Holmes's Rule 29 Motion was timely filed; the issue is whether it was "properly filed."

Figuring out if something is "properly filed" is likely to be a somewhat more difficult question than simply calculating a filing deadline. An application is "properly filed" for AEDPA purposes "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." <u>Artuz</u>, 531 U.S. at 8. Contrary to the dissent, we think it is far from clear, at least on the record before us, that Holmes had a "wealth of opportunities to remedy any error and to verify the appropriate filing procedures." <u>Post</u> at 44. As we noted above, the case law and commentary regarding Rule 29 procedure at the time Holmes filed his motion were far from clear. At best they were ambiguous, and at worst they hinted that Holmes's filing was acceptable. Thus, even assuming Holmes had availed himself of every opportunity to

conduct research in the prison law library, it is by no means clear that he could have ever discovered that his motion was not "properly filed" under then-existing Massachusetts law.

### III. <u>Conclusion</u>

We reject Holmes's argument that the statute of limitations began to run in August of 2000, and **affirm** the district court's holding that the statute of limitations began to run on May 1, 1998. We hold that a properly filed motion under Mass. R. Crim. P. 29 is a motion seeking "post-conviction or collateral review" for AEDPA purposes. We further hold that the Rule 29 Motion Holmes filed in this case was not "properly filed" and thus does not toll the statute of limitations as a matter of law under AEDPA. We **remand**, however, with instructions for the District Court to consider whether there are grounds for equitable tolling, taking into account the reasons for Holmes's delay in requesting a hearing on his Rule 29 Motion as well as whatever information Holmes may have been given regarding the propriety of his Rule 29 Motion when he filed it in 1998. In so remanding, we emphasize that it is Holmes's burden to put forth evidence to show that equitable tolling is justified, but we leave it to the district court to determine what steps should be taken, if needed, to further develop the record. <u>Cf.</u> <u>Whalem/Hunt</u> v. <u>Early</u>, 233 F.3d 1146, 1148 (9th Cir. 2000) (remanding to district court for "appropriate development of the record" on equitable tolling question, observing

that "the district court is in a better position to develop the facts and assess their legal significance in the first instance").

The parties did not address the question of whether the timeliness of a habeas petition should be addressed on a claim-by-claim basis. Thus, if it becomes necessary, the District Court should address this issue.

**AFFIRMED in part and REMANDED for further proceedings.**

**"Dissenting opinion follows"**

**HOWARD, <u>Circuit Judge</u> (dissenting).** Because our decision to remand rests wholly on a claim for equitable relief that is not properly before us, I respectfully dissent.

"There are few principles more securely settled in this court than the principle which holds that, absent exceptional circumstances, an appellant cannot raise an argument for the first time in a reply brief." <u>N. Am. Specialty Ins. Co.</u> v. <u>Lapalme</u>, 258 F.3d 35, 45 (1st Cir. 2001). We have long held, "with a regularity bordering on the monotonous," that such arguments are deemed waived, and with good reason: an appellee cannot conscionably be expected to respond, in any meaningful fashion, to claims and allegations of which it has no prior notice. <u>Waste Mgmt. Holdings, Inc.</u> v. <u>Mowbray</u>, 208 F.3d 288, 299 (1st Cir. 2000); <u>see also</u> <u>Pignons S.A. de Mecanique</u> v. <u>Polaroid Corp.</u>, 701 F.2d 1, 3 (1st Cir. 1979) (Breyer, J.) ("In preparing briefs and arguments, an appellee is entitled to rely on the content of an appellant's brief for the scope of the issues appealed, and appellant generally may not preserve a claim merely by referring to it in a reply brief or at oral argument."). Maintaining this adversarial balance throughout the appellate process is a compelling interest, one that should be contravened only under extenuating circumstances beyond the parties' control, e.g., where the applicable law substantially changes after the opening briefs are submitted. <u>See, e.g.</u>, <u>United States</u> v. <u>Vázquez-Rivera</u>, 407 F.3d 476, 487 (1st Cir. 2005).

Nor, under equally settled precedent, do we generally credit arguments that are "adverted to in a perfunctory manner [or] unaccompanied by some effort at developed argumentation," regardless of where they appear in a party's briefs. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). As we have had frequent occasion to observe, a court should not be left to "do counsel's work, create the ossature for the argument, and put flesh on its bones." Id. We are not mind readers, and to assume that burden by unilaterally cultivating an appellant's claims raises a host of concerns, both procedural and substantive.

These are familiar rules of general applicability, administered with as much force in the habeas context as in any other. Indeed, we have shown no reluctance to deem arguments waived, including equitable tolling claims, that were belatedly or otherwise inadequately raised by petitioners seeking federal habeas relief. See, e.g., Glacken v. Dickhaut, 585 F.3d 547, 551 (1st Cir. 2009) (holding that a habeas petitioner waived an argument to which he devoted only a single line in his opening brief); DeBurgo v. St. Amand, 587 F.3d 61, 72 n. 14 (1st Cir. 2009) (finding a claim arguably waived where it comprised only four sentences of the habeas petitioner's opening brief); Trenkler v. United States, 268 F.3d 16, 26 n. 9 (1st Cir. 2001) (deeming waived a perfunctory equitable tolling claim raised for the first time at oral argument); see also McClaran v. Cockrell, 58 Fed. App'x 595, at *1

(5th Cir. 2003) (holding that a new equitable tolling argument raised for the first time in a habeas petitioner's reply brief had been waived); Gomez v. Castro, 47 Fed. App'x 821, 822 n. 2 (9th Cir. 2002) (same); c.f. Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992) ("[The non-habeas appellant] did not make [the] equitable tolling argument in his opening brief. Rather, the asseveration surfaced for the first time in his reply brief. It is well settled in this court, for good reason which need not be rehearsed here, that a legal argument made for the first time in an appellant's reply brief comes too late and need not be addressed.").

On the contrary, these rules should be especially potent in the realm of equitable tolling, where the claim must identify an obstacle to timely filing that is both "rare" and "extraordinary"; typically, something patently obvious on the face of the record, and therefore not easily disregarded by a claimant absent some dilatory intent. See Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (restricting application of the equitable tolling doctrine to "extraordinary circumstances"). Thus, without a truly exceptional reason -- something beyond the notion that this might be a petitioner's last bite at the apple -- we should not revive tardy or perfunctory equitable tolling arguments which "the party who seeks to invoke [the doctrine] bears the burden of establishing . . . ." Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001).

Yet, here, although the record is devoid of any discernibly exceptional circumstances, we remand for consideration of an equitable tolling argument that plainly fails to clear either of these long-standing procedural hurdles. The petitioner's briefing is unequivocal -- he advances two, and only two, cognizable grounds for equitable relief: (1) the allegedly egregious nature of his trial counsel's Rule 29 advice; and (2) the prison's purportedly draconian library policies. Both are ably dispatched by the majority, and that should be the end of it.

Instead, we solicit further deliberation on a "third" equitable tolling argument: that the petitioner was misled by the prison's boilerplate Rule 29 forms. The trouble is, this claim was only raised, if at all, for the first time in a single sentence of the petitioner's reply brief, and then only in relation to the merits of his Rule 29 claim. Specifically, in asserting that his Rule 29 motion was properly filed under Massachusetts law, the petitioner notes only that "the [Rule 29] Motion and Affidavit which [the petitioner] filed are hand-written onto xeroxed forms, which are provided to incoming prisoners when they arrive at [the prison]." Nowhere is this statement framed as a justification for equitable remediation, and its cursory nature does not even begin to approach the level of development traditionally necessary for consideration on appeal. This is not, as the majority suggests, a simple case of a party failing to apply the "necessary label" --

-41-

rather, it is a classic example of waiver by inadequate argument.[7]
In essence, we manufacture the appellant's claim, effectively
precluding the appellee from delivering a satisfactory response.
This, I think, is beyond our proper province, and therefore I
cannot join in remanding on this ground.[8]

---

[7] The majority notes that we have the discretion, in certain
circumstances, to overlook waiver by inadequate argument. See,
e.g., Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2009).
Those circumstances are absent here. Such discretion is not
unfettered, and should be used sparingly. As we have previously
stated, "courts should be reluctant to act affirmatively in
identifying and supporting arguments that could have been, but were
not, made by a party. At a bare minimum, such an action should be
reserved for circumstances in which there is some likelihood that
the ultimate outcome would change in the assisted party's favor."
United States v. Vega Molina, 407 F.3d 511, 534 n.7 (1st Cir.
2005). Since, as the majority acknowledges, it "cannot say what
the result should be" even if this equitable tolling argument is
resuscitated, and because this case presents none of the special
circumstances that typically form the basis for overlooking waiver,
see, e.g., Nat'l Org. for Marriage, Inc. v. McKee, 669 F.3d 34, 43
(1st Cir. 2012) (overlooking waiver by inadequate argument because
of importance of issues raised and extent of resources expended in
expansive litigation); Costa-Urena, 590 F.3d at 30 (overlooking
waiver by inadequate argument where argument would likely change
the outcome); United States v. Leavitt, 925 F.2d 516, 517 (1st Cir.
1991) (overlooking waiver by inadequate argument of a sentencing
guidelines issue where the guidelines were relatively new, the
issue was purely legal, and the sentencing differences were so
great as to bring about a serious miscarriage of justice if he is
legally right), I see no reason to take such a course of action
here. See Nat'l Ass'n of Social Workers v. Harwood, 69 F.3d 622,
627 (1st Cir. 1995) ("[T]he raise-or-waive principle [may not] be
dismissed as a pettifogging technicality or a trap for the
indolent; the rule is founded upon important considerations of
fairness, judicial economy, and practical wisdom.").

[8] The majority suggests that because Kholi v. Wall, 582 F.3d 147
(1st Cir. 2009) had yet to be decided, the petitioner had no cause
to raise the issue before the district court. That may be, but it
does not excuse his failure to do so in his opening appellate
brief, where we explicitly requested that counsel discuss the Rule

Even if this equitable tolling claim had been properly preserved, and the prison had advised the petitioner that his boilerplate forms complied with the strictures of Rule 29, we still should not remand, because it is far from apparent that such conduct qualifies as an extraordinary circumstance sufficient to trigger equitable relief.

Starting from scratch, as it must given the petitioner's failure to cite any relevant authority whatsoever, the majority suggests that Williams v. Thaler, 400 Fed. App'x 886 (5th Cir. 2010), might inform the district court's equitable tolling analysis. Thaler, however, is distinguishable in several critical respects. There, the state court had repeatedly notified the petitioner that his state habeas petition was pending, when in fact it had already been denied. Because there was no alternative source for the information, or additional action that the petitioner could have taken to remedy the error, the court's misleading advice made it virtually impossible for the petitioner to meet AEDPA's stringent timeliness requirements with respect to his subsequent federal petition. Here, by contrast, the petitioner was instructed (maybe erroneously) how to file, rather than being told that he had already properly done so; the advice came not from the court itself, but from some heretofore unidentified member of

29 issues in light of Kholi, or his failure to do so sufficiently in his reply brief, after the Commonwealth had expressly called the procedural validity of his Rule 29 motion into question.

the prison staff; and perhaps most importantly, the petitioner still had a wealth of opportunities to remedy any error and to verify the appropriate filing procedures (including opportunities to conduct his own independent research). In other words, the prison's actions here did not foreclose the petitioner's ability to properly file his Rule 29 motion, and consequently, to timely file the federal petition now at issue.

These distinctions are not academic, and indeed they form the basis for several federal decisions on somewhat analogous facts. In Alexander v. Schriro, 312 Fed. App'x 972 (9th Cir. 2009), for example, no extraordinary circumstances were found where a member of the prison staff offered misleading advice to a federal habeas petitioner in calculating the applicable limitations period. Distinguishing from cases where "a prison official's wrongful conduct prevents a petitioner from filing," the court explained that "in this case, the [prison staff] did not do or fail to do anything that actually made it impossible for [the petitioner] to file on time." Id. at 975 (internal citations omitted); see also Henderson v. Nooth, No. 3:07-CV-01823-JO, 2012 WL 1801736, at *4 (D. Or. May 16, 2012) (finding that erroneous filing advice from a prison staff member, "while extremely unfortunate," does not rise to the level of extraordinary circumstances because it did not "ma[k]e it impossible for petitioner to file on time"); Madison v. Hulihan, No. 09-CV-337, 2012 WL 1004780, at *4 (E.D.N.Y. March 23,

-44-

2012) (rejecting claim of equitable tolling where state-provided habeas forms lacked information about AEDPA filing requirements, and holding that "a state-created impediment can warrant equitable tolling [only] in the rare instance where the state 'effectively prohibits' the petitioner from pursuing a habeas petition"); Dulaney v. United States, Nos. 6:08-cv-00859, 6:09-cv00372, 2011 WL 4436639, at *2 (S.D. W. Va. September 23, 2011) (refusing to apply equitable tolling where habeas corpus forms supplied by the prison appeared to inform petitioner (in error) that he could not file his federal habeas petition until he completed his state sentence and began serving his federal sentence); Elliott v. Napoli, No. 07-CV-3942, 2010 WL 1816406, at *2 (E.D.N.Y. May 4, 2010) ("Simply, falling victim to the incompetence of nonlawyer [prison library staff] is . . . not an extraordinary circumstance."); James v. Hudson, No. 1:07-CV-3651, 2009 WL 111637, at *8 (N.D. Oh. Jan. 15, 2009) ("The fact that, instead of himself ascertaining the relevant law, [the petitioner] chose to rely on [prison] library clerks for such critical information does not make that choice an extraordinary circumstance that stood in the way of compliance with the time requirement and now justifies equitable tolling."); Roman v. Artuz, No. 00-CIV-1400-DLC, 2000 WL 1201392, at *2 (S.D.N.Y. Aug. 22, 2000) (finding that prison law clerks' erroneous advice that a state FOIA request would toll AEDPA's statute of limitations was not an extraordinary circumstance).

This, of course, is not intended to be an exhaustive collection of applicable authority; that was for the petitioner to provide. Nonetheless, pursuant to the prevailing authority, it is likely that the prison's allegedly inaccurate filing advice -- whether that encompassed the mere dissemination of boilerplate forms or, at worst, also included verbal assurances that such forms were sufficient for filing purposes -- does not rise to the extraordinarily high level required for the application of equitable tolling.

Finally, though no less significantly, even if the prison's actions do constitute an extraordinary circumstance, the petitioner has still failed to demonstrate that he pursued his rights diligently during the more than two-year gap between June 17, 1998 and August 17, 2000, when he remained idle despite his pending Rule 29 motion. The only conceivable basis for the motion -- the petitioner's anticipated cooperation with the government on another case -- was well known to the petitioner at the time that the motion was originally filed. Had he simply employed that knowledge and requested a hearing within a reasonable period of time, all of these issues could easily have been averted. Neither the petitioner nor the majority provide an acceptable explanation for this extended period of inactivity.[9]

---

[9] The majority states only that, during this time, Holmes's correspondence with his trial attorney "suggests that Holmes may have been waiting to learn whether the prosecutor wanted

-46-

For these reasons, I would excise any treatment of the putative equitable tolling argument, join the court's otherwise well-reasoned opinion, and affirm the order of the district court.

---

information from him" about the other case. A two-year period of inactivity, interrupted only by occasional correspondence with his trial attorney, does not seem to meet the level of reasonable diligence necessary to ground a claim of equitable tolling. See, e.g., LaCava v. Kyler, 398 F.3d 271, 277-78 (3d Cir. 2005) (deciding not to remand the appellant's habeas petition for an evidentiary hearing on the availability of equitable tolling where he allowed twenty-one months to lapse between the filing of a state court motion and his subsequent inquiry as to its status). In any event, it should not be left to the court to comb the record for favorable facts supporting remand. Pursuing one's rights with reasonable diligence is one of two prongs that the petitioner must show to meet the high burden for equitable tolling. Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (holding that a "petitioner is entitled to equitable tolling only if he shows . . . that he has been pursuing his rights diligently . . . .") (emphasis added). Holmes did not even attempt to make that showing here.