On Second Return to Remand Following Remand-from the Alabama-Supreme Court 
WELCH, Judge.
John Michael Ward appeals the circuit court’s order dismissing his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P. By an order dated June 29, 2016, and following the remand of this case to. this Court by the Alabama Supreme Court, this Court remanded this case to the Baldwin Circuit Court for that court to make specific findings of facts concerning whether Ward was entitled to have the limitations period equitably tolled for the purpose of filing his postconviction petition. See Ward v. State (CR-12-1561, June 29, 2016) (order). The circuit court complied with our instructions and has filed its return to remand with- this Court. We reverse and remand.
Procedural History
In December 1998, Ward was convicted of murdering his four-month-old son, Nicholas Ward, an offense defined as capital by § 13A-5-40(a)(15), Ala. Code 1975, because Nicholas was under the age of 14 years at the time of his death. The jury, by a vote of 10- to 2, recommended that Ward be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Ward to death. In the trial court’s order sentencing Ward to death, the circuit court set out the following facts surrounding Ward’s conviction:
“On April 22, 1997, at 7:28 A.M. ;an operator at the Baldwin County 911 Center received a call from Michelle Milner Ward, who stated that her baby was not breathing. Ten minutes later paramedics .arrived at the Wards’ residence, a 16’ x 7’ travel trailer. After receiving Nicholas Ward’s body from John Michael Ward (hereinafter ‘Ward’) the paramedics attempted resuscitation by intubation while en route to .the South Baldwin Regional Medical Center. The emergency room attending physician, Dr. Robert Revel, examined the infant determining that he was not breathing, had no pulse, was cold to the *492 touch and had rigor mortis. The doctor pronounced the child dead on arrival. In addition to the lack of vital signs, Dr. Revel observed abrasions on Nicholas’s scalp, nose and mouth area, pus-like material in his eyes, blood in the ears, bruises on the neck and chest, stool in the diaper, a deformity on his right arm, and crusty material in some nail beds.
“After the examination, Dr. Revel interviewed both parents. The father stated that Nicholas had been struck on the head by a folding chair falling from a shelf and that the baby had had breathing problems later in the day. The mother had wanted to seek medical attention, but ... the father did not think it necessary.
“Dr. Harold Reed, a pediatrician, answered the code call in the emergency room. He testified that he also examined the body and found the internal body temperature was 88 degrees.
“Because foul play was suspected, hospital personnel contacted the Baldwin County Sheriffs office. Officer John Stewart arrived first and was followed by Chief Investigator Huey Mack, Jr. Officer Mack also observed abrasions on Nicholas’s forehead, nose and mouth, bruises on the chest and arm, and missing toenails. He notified the Baldwin County coroner and the Department of Forensic Science of the unnatural death. Mr. Mack testified that the mother appeared to be upset during the administration of the last rites, but Ward was emotionless.
“Investigator Mack left the hospital and met Chuck Machette, a caseworker with the Baldwin County Department of Human Resources at .the Ward residence. The crime scene was photographed and videotaped. Ward and his wife participated in the taping. Mack took into his,possession a blood-stained pillow from the bed where the parents said Nicholas had been sleeping the night before. Subsequent DNA testing revealed the blood belonged to Nicholas.
“Dr. James Downs, the state medical examiner, performed the autopsy on Nicholas. He photographed and videotaped the body during the’ course of the autopsy. The pictures recorded the various injuries to the baby’s body. From the autopsy procedure, Dr. Downs concluded that Nicholas had been an infant that failed to thrive. In addition, the child suffered multiple fractures to the arms and ribs and damage to the toenails and fingernails. He opined that Nicholas suffered a spiral fracture of the right arm the day before death. Dr. Downs determined the cause of death to be multiple blunt-force injuries and suffocation.
“Michelle Milner Ward testified that early in her relationship with Ward he placed his hand over her mouth and threatened to suffocate her. Ward continued to physically abuse his wife throughout the marriage.
“Nicholas was born in December 1996, as the second child of her marriage to Ward. In January 1997, Mrs. Ward fled to her mother’s home in Mobile, taking Nicholas and his sister, [A.W.]. After remaining there one month, Mrs. Ward and the children moved to Penelope House, a Mobile County Shelter for battered women. After one month there, the mother and children returned to Ward’s trailer in Magnolia Springs. Ward inflicted numerous injuries on his four month old son and murdered him by suffocation in the early morning hours of April 22,1997.”
(Trial Record, C.R. 5-7.)
On direct appeal, this Court affirmed Ward’s conviction, and both the Alabama Supreme Court and the United States Su *493 preme Court denied certiorari review. See Ward v. State, 814 So.2d 899 (Ala. Crim. App. 2000), cert. denied, 814 So.2d 925 (Ala. 2001), cert. denied, 535 U.S. 907, 122 S.Ct. 1208, 152 L.Ed.2d 145 (2002). (“Ward I”). Pursuant to Rule 41(b), Ala. R. App. P., this Court issued the certificate of judgment on September 7, 2001.
In November 2005, Ward filed a petition for postconviction relief pursuant to Rule 32, Ala. R. Crim. P., in the Baldwin Circuit Court. The circuit court summarily dismissed that petition after finding that it was untimely filed.[1] This Court affirmed the circuit court’s summary dismissal. See Ward v. State, No. CR-05-0655, 988 So.2d 1078 (Ala. Crim. App. 2006) (table) ("Ward II”).
On certiorari review, the Alabama Supreme Court reversed this Court’s decision and held that the period in which to file a Rule 32, Ala. R. Crim. P., petition is not jurisdictional and that “equitable tolling” may be available to toll the limitations period to allow the filing of an untimely postconviction petition. Thereafter, the Supreme Court remanded the case to this Court for further proceedings. See Ex parte Ward, 46 So.3d 888 (Ala. 2007) ("Ward III”). In Ward III, the Alabama Supreme Court first recognized that equitable tolling could extend the time for filing a postconviction petition pursuant to Rule 32, Ala. R. Crim. P., when a petitioner could establish both “extraordinary circumstances” and “reasonable diligence.” The Supreme Court explained:
We hold that equitable tolling is available in extraordinary circumstances that are beyond the petitioner’s control and that are unavoidable even with the exercise of diligence. We recognize that ‘[i]n a capital case such as this, the consequences of error are terminal, and we therefore pay particular attention to whether principles of “equity would make the rigid application of a limitation period unfair” and whether the petitioner has “exercised reasonable diligence in investigating and bringing [the] claims.”’ Fahy v. Horn, 240 F.3d 239, 245 (3d Cir. 2001) (quoting Miller v. New Jersey Dep’t of Corr., 145 F.3d 616, 618 (3d Cir. 1998)). Nevertheless, ‘the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.’ United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000).
“Finally, we must address the petitioner’s burden of demonstrating that he or she is entitled to the relief afforded by the doctrine of equitable tolling. Rule 32.7(d), Ala. R.Crim. P., allows the trial court to summarily dismiss a Rule 32 petition that, on its face, is precluded or fails to state a claim, and we have held that the trial court may properly summarily dismiss such a petition without waiting for a response to the petition from the State. Bishop v. State, 608 So.2d 345, 347-48 (Ala. 1992) (‘“Where a simple reading of a petition for post-conviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court [may] summarily dismiss that petition without requiring a response from the district attorney.” ’). Although the Rules of Criminal Procedure initially place the burden on the State to plead any ground of preclusion, the ultimate burden is on the petitioner to disprove that a ground of preclusion applies. Rule 32.3, Ala. R. Crim. P.
*494 “Because the limitations provision is mandatory and applies in all but the most extraordinary-, of circumstances, when a petition is time-barred on its face the petitioner bears the burden of demonstrating in his petition that there are such extraordinary circumstances justifying the application of the doctrine of equitable tolling. See Spitsyn v. Moore, 345 F.3d [796] at 799 [ (9th Cir. 2003) ] (holding that the burden is on the petitioner for the writ of habeas corpus to show that the exclusion applies and that the ‘extraordinary circumstances’ alleged, rather than a lack of diligence on his part, were the proximate cause of the untimeliness); Drew v. Department of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) (‘The burden of establishing entitlement ’ to this extraordinary remedy plainly rests with the petitioner.’). Thus, when a Rule 32 petition is time-barred on its face, the petition must establish entitlement to the remedy afforded by the doctrine of equitable tolling.”
46 So.3d at 897-98.
On remand following Ward III, this Court held that equitable tolling was not available in Ward’s case because Ward had not affirmatively pleaded that ground in his postconviction petition. We again affirmed the circuit court’s summary dismissal of Ward’s postconviction. petition. See Ward v. State (No. CR-05-0655), 14 So.3d 196 (Ala. Crim. App. 2007)(table) (“Ward IV”). Ward appealed, and, the Alabama Supreme Court again reversed this Court’s decision, finding that Ward had hád no opportunity to assert equitable tolling; therefore, that Court reasoned, Ward should have an opportunity to present that claim in the lower' court. See Ex parte Ward, 46 So.3d 898 (Ala. 2010) (“Ward V”). Consistent with the Supreme Court instructions, this Court remanded the case to the circuit court. See Ward v. State, 46 So.3d 903 (Ala. Crim. App. 2010) (“Ward VI”).
After this case was remanded a second time, Ward moved to amend his postcon-viction petition to address claims other than equitable ■ tolling. The circuit court limited the scope of Ward’s amendment solely to the issue of equitable tolling.[2] In the amendment, Ward argued that the limitations period should bé equitably tolled because, he says: (1) his postconviction counsel’s conduct amounted to extraordinary' circumstances and he exercised reasonable diligence in protecting his rights; and (2) he is innocent of the crime for which he was convicted.
In support of his actual-innocence claim, Ward attached a report authored by Dr. Janice J. Ophoven, a pediatric forensic pathologist, hired by Ward for his federal habeas corpus proceedings. It was Dr. Ophoven’s opinion that Nicholas Ward died of pneumonia and did not die of blupt-force trauma and suffocation as the State’s expert testified at Ward’s trial. Dr. Opho-ven also gave alternative explanations concerning Nicholas’s extensive injuries.
At the circuit court’s hearing on the second remand, the attorney who had been hired to represent Ward in postconviction proceedings, Vader A1 Pennington, testified. Numerous documents were also admitted into evidence that included letters Ward had written to Pennington and letters Ward had sent to the circuit court’s office and to the federal court. After con *495 sidering the evidence, the circuit court issued an order finding that Ward was not entitled to equitable .tolling in his postcon-viction proceedings. (C.R. 2174.) As stated above, this Court had remanded the case to the circuit court for that court to make specific findings of facts as to whether Ward was entitled to equitable tolling. The circuit court, in a 23-page order made specific and thorough findings as to why it declined to apply equitable tolling to Ward’s .postconviction petition. This case is now before this Court on return to second remand.
Ward argued that the circuit court erred in denying his request to equitably toll the limitations period for filing his Rule 32 petition. Specifically, Ward argued that in accordance with Ward III he established the prerequisites for equitablé tolling—(1) extraordinary circumstances, and (2) reasonable diligence—and that the circuit court had erred in declining to toll the limitations period.
(1) Extraordinary Circumstances
In regard to this prong of the Ward III inquiry, the circuit court stated, in part:
“Ward argues that he is entitled to equitable tolling because Pennington did not follow his instructions to timely file a Rule 32 petition, and because Pennington instead filed a federal habeas petition. Although Pennington’s decision to file a habeas petition instead of a'Rule 32 petition might have been a questionable strategic decision, that decision did not prevent Ward from timely filing a Rule 32 petition. Indeed, Ward knew about Pennington’s decision at a point well before the Rule 32 petition was due to be filed; thus, Ward could have timely filed a Rule 32 petition if he had demonstrated diligence.
[[Image here]]
“Pennington’s decision to file a federal habeas petition instead of a Rule 32 petition was certainly negligent, but that fact does not mean that he abandoned or effectively abandoned Ward. Negligence, however gross, is not the same as abandonment, and the record shows that Pennington did not abandon Ward.” ;
(C. 20-21.)
Testimony and exhibits admitted, at the remand hearing showed that in. July 2002, Ward’s family hired Pennington to represent Ward in postconviction proceedings in state court. A letter, dated ..July 29, 2002, written by Pennington to Ward was admitted into evidence. That letter reads:
“I am in receipt of your letter of 26th of July 2002, and I want to- assure you that I am processing this paperwork for the purpose of filing a Rule 32.
“I hope to get the Rule 32 filed in the very near future, in prder that there can be no questions as to its timeliness, and then we can proceed with the additional discovery that will be necessary, to prosecute this matter on your behalf.
“I will be in touch with you in the near . future.”
(C.R. 1527.)
Pennington testified .that Wa:?d . wrote him about two times a week and telephoned him on numerous occasions and that it was his decision to not to file a Rule 32 petition after talking with the attorneys who had represented Ward at trial. The following occurred during Pennington’s, direct testimony:
“[Ward’s postconviction counsel]: Did you confer with Mr, Ward about how you were going to handle his postconviction relief?
“[Pennington]: I conferred with Mr. Ward on any number of subjects.
[[Image here]]
*496 “[Pennington]: The decision where to file was’ mine. I made that decision. I made that decision based on the reasons I have stated before, that tactically I felt that. filing in state court would stand nothing, and was not to get any shape or form of relief, that we had a valid claim of futility, and that Federal relief was substantially more likely than State court relief.
“[Ward’s postconviction counsel]: And after making that decision, you did not relay that information to Mr. Ward prior to the filing of the Federal petition?
“[Pennington]: I did not.”
(R. 59-60.) On March 3, 2003, Pennington filed a habeas corpus petition in the United States District Court for the Southern District of Alabama;[3] however, he did hot file a Rule 32, Ala. R. Crim. P., petition in the Baldwin Circuit Court as he was hired to do by Ward’s family.
Ward testified that he wrote Pennington on numerous occasions. (In one document admitted into evidence Ward states that he wrote Pennington 37 times.) Ward further testified that he telephoned Pennington multiple times but that he was unable to reach him most of the time; that he gave Pennington documents concerning his' case; that he wrote the Baldwin County circuit clerk in April 2003 asking if a post-conviction petition had been filed on his behalf because he was aware that the filing deadline was fast approaching (C.R. 1534); that in May 2003 the Baldwin County clerk’s office notified him that no postcon-vietion petition had been filed; that in June 2003 he requested a copy of the habeas corpus petition that had been filed in federal court; that in August 2003 he moved the federal court to dismiss Pennington as his counsel and to appoint him a new attorney; that he requested that Pennington return his documents; that in December 2003 he moved the circuit court to extend his limitations period to file a post-conviction petition and to appoint counsel; that in February 2004 he filed a complaint against Pennington with the Alabama State Bar;[4] that he never agreed to abandon filing a Rule 32, Ala. R. Crim. P., petition in the state court; and that Pennington never returned any of Ward’s files. Ward also testified that the federal court did not grant his request to remove Pennington until February 2005 because Pennington asked to remain on his case and that in February 2005 Attorney Greg Hughes was appointed to represent Ward in the habeas corpus proceedings.
Attorney Hughes testified that when he was appointed to represent Ward he moved the federal court to stay the federal proceedings so that he could file a postcon-viction petition in the Baldwin Circuit Court, that the federal court granted that stay, and that in November 2005 he filed the present postconviction petition in the Baldwin Circuit Court.
In Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the United .States Supreme Court first addressed whether equitable tolling applied to the limitations period for filing a habeas corpus petition under the Antiterrorism and Effective Death Penalty Act (“AED- *497 PA”). In reversing the lower court’s decision, the Supreme Court held that the lower court had applied too rigid a definition of what attorney misconduct was sufficient to constitute extraordinary circumstances that prevented a timely filing. The Supreme Court stated:
“We have previously made clear that a ‘petitioner’ is ‘entitled to .equitable tolling’ only if he shows ‘(1) that he has been pursuing his rights diligently, and (2) that some. extraordinary circumstance stood in his way’ and prevented timely filing. Pace [v. DiGuglielmo], 544 U.S. [408] , at 418 [ (2005) ](emphasis deleted). In this case, the ‘extraordinary circumstances’ at issue involves an attorney’s failure to satisfy professional standards of care. The Court of Appeals held that, where .that is so, even attorney conduct that is ‘grossly negligent’ can never warrant tolling absent ‘bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part.’ [Holland v. Florida,] 539 F.3d [1334] at '1339 [ (11th Cir. 2008) ]. But in our view, the Court of Appeals’ standard is too rigid.
[[Image here]]
‘We have previously held that ‘a garden variety claim of excusable neglect,’ Irwin [v. Department of Veterans Affairs], 498 U.S. [89] at 96 [ (1990) ], such as a simple ‘miscalculation’ that leads a lawyer to miss a filing deadline, Lawrence [v. Florida], [549 U.S. 327], at 336 [(2007)], does -not warrant equitable tolling. But the case before us does not involve, and we are not considering, a ‘garden variety claim’ of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be ‘extraordinary’ before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.
“The record facts that we have set forth in Part I of this opinion suggest that this case may well be an ‘extraordinary’ instance in which petitioner’s attorney’s conduct constituted far more than ‘garden variety’ or ‘excusable neglect.’ To be sure,- [Attorney Bradley] Collins failed to file Holland’s petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland’s federal petition on time despite Holland’s many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland’s letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, 'again despite Holland’s many pleas for that information. And Collins failed to communicate with his client over á period of years, despite various pleas .from Holland that Collins respond to his letters.”
560 U.S. at 649-52.
The next year in Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), the United States Supreme Court again addressed what circumstánces were sufficient to rise to the level of extraordinary circumstances in order to invoke equitable tolling. In Maples, the two New York attorneys left their law firm in New *498 York while representing Maples and became ineligible to represent him; however, neither-attorney informed Maples of their departure from that firm. The Supreme Court found that the attorneys’ actions constituted abandonment of their client and were extraordinary circumstances sufficient to invoke equitable tolling.
More recently in Christeson v. Roper, 574 U.S. -, 135 S.Ct. 891, 190 L.Ed.2d 763 (2015), the United States Supreme Court again visited this issue and held that Christeson was entitled to have an opportunity to establish that equitable tolling applied to the filing of his habeas corpus petition. The Supreme Court reminded: “Tolling based on counsel’s failure to satisfy AEDPA’s [Antiterrorism and Effective Death Penalty Act] statute of limitations is available only for ‘serious instances of attorney misconduct.’” 574 U.S. -, 135 S.Ct at 894.
' Equitable tolling has routinely been applied in situations where an attorney has misled or deceived a client.
“Equitable tolling is permitted only ‘in rare and exceptional circumstances.’ Davis [v. Johnson], 158 F.3d [806] at 811 [ (5th Cir. 1998) ]. Cousin contends that neither he nor his attorneys received notice of the denial of his IFP [in forma pauperis] motion and therefore had.no way of knowing that the filing fee had become due. Cousin claims that this failure of notice was error by the district court sufficient to justify equitable tolling of the limitations period. Equitable tolling is warranted, however, only in situations ‘where the plaintiff is actively misled by the defendant ... or is prevented in some extraordinary way from asserting his' rights.’ Coleman v. Johnson, 184 F.3d 398, 403 (5th Cir. 1999).”
Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).
“Equitable tolling is permissible only in ‘rare and exceptional circumstances.’ [Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998)]. This circuit has found several circumstances not to warrant equitable tolling: a prisoner’s pro se status, inadequate prison library (Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000), citing United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993)); allegation of 43 days late notice of effectiveness of the AEDPA [Antiterrorism and Effective Death Penalty Act] and 17 days in psychiatric evaluation (Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999)). This court has found equitable tolling when a petitioner was -misled by the district court that upon dismissing an earlier timely petition without prejudice he would be allowed to refile at a later date. United States v. Patterson, 211 F.3d 927, 931-32 (6th Cir. 2000). This court has also remanded a case to the district court, for a hearing to determine if a petitioner can establish facts .in support of his allegations for equitable tolling. Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000) (Petitioner alleged late notice of denial of state habeas petition.)”
United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002).
“While the normal errors made by attorneys may not justify equitable tolling of the statute of limitations for filing a habeas petition, extreme situations, such as abandonment, require a different result. Accordingly, an attorney’s conduct, if it is sufficiently egregious, may constitute the sort of ‘extraordinary circumstances’ that would justify the application of equitable tolling to the one year limitations period. As detailed above, petitioner reasonably relied on the silence of his counsel, Mr. [Winston] Rice, to his detriment. An attorney’s intentional deceit may warrant equitable *499 tolling of statute of limitations on a motion for collateral relief if a petitioner shows that he reasonably relied on his attorney’s deceptive misrepresentations. Silence has been equated with deception in the Fifth Circuit when there is a legal or moral duty to speak. The attorney client relationship contains both a legal and moral duty to speak. Failure of petitioner’s attorney to do so merits equitable tolling.”
Wessinger v. Cain, 358 F.Supp.2d 523, 529-30 (M.D. La. 2005).
Since the Alabama Supreme Court’s decision in Ward III and the United States Supreme Court’s decisions in Holland v. Florida and Maples v. Thomas, this Court has applied equitable tolling to a postcon-viction petition filed pursuant to Rule 32. In Patrick v. State, 91 So.3d 756 (Ala. Crim. App. 2011),[5] this Court stated:
“In the instant case, Patrick asserted in his Rule 32 petition that the doctrine of equitable tolling should apply in his ease. Patrick alleged that his appellate counsel, Pennington, had advised him that he would file a Rule 32 petition on Patrick’s behalf in the Washington Circuit Court and that he would send Patrick a copy of the Rule 32 petition once it had been filed. Patrick alleged that he never received a copy of. the Rule 32 petition. Patrick stated that he tried, to no avail, to contact Pennington to inquire about the status of his Rule 32 petition. Patrick further represented that his wife, who attempted to contact Pennington after her husband’s failed attempts, was able to contact Pennington only to be falsely informed that a Rule 32 petition had been filed on Patrick’s behalf. Patrick alleged that after he did not receive a copy of the Rule 32 petition as requested, he and his wife attempted to contact Pennington using various forms of communication. Finally, Patrick’s wife contacted the Washington Circuit Court clerk’s office and learned that no Rule 32 petition had been filed on Patrick’s behalf. Patrick subsequently filed a formal complaint with [the] Alabama State Bar. The State Bar concluded in a letter attached as an exhibit to Patrick’s Rule 32 petition that formal charges should be filed against Pennington.
“The facts as alleged by Patrick in his Rule 32 petition and ‘Motion for Enlargement’ demonstrate ‘extraordinary circumstances justifying the application of the doctrine of equitable tolling,’ [Ex parte] Ward, 46 So.3d [888] at 897 [ (Ala. 2007) ]. Pennington told Patrick that he would file a Rule 32 petition in the circuit court;' however, Pennington never filed a Rule 32 petition. Patrick’s repeated attempts to contact Pennington proved futile, and, on the one occasion his wife was able to Communicate with Pennington, Pennington falsely claimed that he had filed a Rule §2 petition in the circuit court. Even after receiving this false information, Patrick and his wife continued to try and contact Pennington when they did not receive a copy of the Rule 32 petition.1 Patrick’s failure to file a timely Rule 32 petition was unavoidable even with the exercise of due diligenco, given Pennington’s-misrepresentations to Patrick' and his wife and Pennington’s evasive behavior. See Ex parte Ward, 46 So.3d at 897.
*500 “In Ex parte Ward, Ward’s family-had hired Pennington, the same attorney whose performance is at issue in the instant case. Pennington informed Ward that he would file a timely Rule 32 petition on his behalf. 46 So.3d at 890. Instead, Pennington filed a writ of habeas corpus in the United States District Court. Ward alleged that Pennington deceived him by filing a petition for a writ of habeas corpus when he was led to believe that Pennington was going to file a Rule 32 petition. 46 So.3d at 890.”
91 So.3d at 759-60.
Our neighboring State of Tennessee addressed, in depth, the United States Supreme Court’s decision in Holland v. Florida. In Whitehead v. State, 402 S.W.3d 615 (Tenn. 2013), the Tennessee Supreme Court aptly stated:
“The [Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) ] Court cited examples from ‘several lower courts,’ which ‘specifically held that unprofessional attorney conduct may, in certain circumstances, prove “egregious” and can be “extraordinary.” ’ Holland v. Florida, 130 S.Ct. at 2563-64. One of these was Calderon v. United States District Court, 128 F.3d 1283, 1289 (9th Cir. 1997), overruled on other grounds by Calderon v. United States District Court, 163 F.3d. 530, 540 (9th Cir.1998) (en banc). In Calderon v. United States District Court, the petitioner’s lead counsel ‘withdrew after accepting employment in another state,’ and the’work product the attorney left behind was ‘not useable by replacement counsel—ra turn of events over which [the petitioner] had no control. Calderon v. United States Dist. Court, 128 F.3d at 1289. A similar result was reached in Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001), in which a petitioner’s lawyer ‘effectively abandoned him’ and in ‘multiple ways’ prevented him from filing his petition on time. Among other shortcomings, Mr. Nara’s attorney failed to inform him when the state supreme court denied his appeal, led Mr. Nara to believe that she was going to file a habeas petition on his behalf, and told him there were no time constraints in filing his petition. Nara v. Frank, 264 F.3d at 320.
“A third example cited by. the United States Supreme Court in Holland v. Florida was Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003). By failing to file a petition despite being directed to do so. Mr. Baldayaque’s attorney ‘violated a basic duty of an attorney to his client/ namely the ‘duty of loyalty,’ which ‘encompasses an obligation to defer to the client’s wishes on major litigation decisions.’ Baldayaque v. United States, 338 F.3d at 152 (quoting In re ‘Agent Orange’ Prod. Liab. Litig., 800 F.2d 14, 17 (2d Cir. 1986)). This omission, combined with the attorney’s failure to contact Mr. Baldayaque or research his case, fell so far outside the range of behavior a client should reasonably expect from an attorney, it constituted an extraordinary circumstance. Baldayaque v. United States, 338 F.3d at 152-53.
“The Court also cited Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003), which is particularly relevant to Mr. Whitehead’s case. Along with poor communication and failure to file a petition, the key misconduct attributed to Mr. Spitsyn’s attorney was that ‘despite a request that he return Spitsyn’s file, [the attorney] retained it for the duration of the limitations period and more than two months beyond. That conduct was so deficient as to distinguish it from ... merely negligent performance.’ Spitsyn v. Moore, 345 F.3d at 801. Furthermore, the United States Court of Appeals for the Ninth Circuit noted:
*501 “ ‘It has been argued that' Spitsyn could have satisfied the deadline despite [the attorney’s] misconduct by filing a petition pro se. But without the file, which [the attorney] still possessed, it seems unrealistic to expect Spitsyn to prepare and file a meaningful petition on his own within the limitations period. We have previously held that equitable tolling may be appropriate when a prisoner had been denied access to his legal files. Lott v. Mueller, 304 F.3d 918, 924 (9th Cir. 2002). That logic would apply to Spit-syn’s situation as well.’
“Spitsyn v. Moore, 345 F.3d at 801.”
402 S.W.3d at 628-29.
In this case, Ward instructed his retained attorney to file a postconviction petition in the Baldwin Circuit Court. Instead, the attorney disregarded his client’s express wishes and filed a habeas corpus petition in the federal court without first consulting his client. As the United States Court of Appeals for the Second Circuit stated in Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003), a case cited by the Tennessee Supreme Court in Whitehead:
“In spite of being specifically directed by his chent’s representatives to file a [28 U.S.C. § ]‘2255,’ [federal habeas corpus petition], [counsel] failed to file such a petition at all. By refusing to do what was requested by his client on such a fundamental matter, [counsel] violated a basic duty of an attorney to his client. See In re Agent Orange Prod. Liab. Litig., 800 F.2d 14, 17 (2d Cir. 1986) (‘As a matter of professional responsibility, an attorney owes a duty of lpyalty to his client. This duty encompasses an obligation to defer to the client’s wishes on major litigation decisions.’).
[[Image here]]
“[Baldayaque’s attorney] never spoke to or met Baldayaque. When his letter to Baldayaque was returned, [his attorney] made no effort to locate Balda-yaque. [His attorney]. failed to ‘keep [his] client reasonably informed about the status of [the case]’ and failed to ‘explain [the] matter to the extent reasonably necessary to permit [Balda-yaque] to make informed decisions regarding the representation,’ as required by Connecticut Rule of Professional Conduct 1.4.
“[The attorney’s] actions were far enough outside the range of behavior that reasonably could be expected by a client that they may be considered ‘extraordinary.’ In Valverde v. Stinson, 224 F.3d 129, 133 (2d Cir. 2000), we held that the confiscation of the petitioner’s legal papers by a corrections officer shortly before the section 2255 filing deadline was ‘ “extraordinary” as a matter of law.’ That was so even though the usual problems inherent in being incarcerated do not justify equitable tolling. Likewise, while the normal errors made by attorneys may not justify equitable tolling, extreme situations such as the one presented here require a different result. Accordingly, we hold that an attorney’s conduct, if it is sufficiently egregious, may constitute the sort of ‘extraordinary circumstances’ that would justify the application of equitable tolling to the one-year limitations period of AEDPA [Antiterrorism and Effective Death Penalty Act of 1996].
338 F.3d at 152-53.
The facts presénted in this case are similar to the facts in Baldayaque. Ward’s attorney failed to follow his client’s express instructions,' thereby violating one of his basic obligations as an attorney—the obligation to defer to his client’s wishes on major decisions. Accordingly, we hold that Ward did establish that extraordinary circumstances existed in - his case—circum *502 stances sufficient to excuse his late filing. See Baldayaque, supra.
(2) Reasonable Diligence
In finding that Ward failed to show reasonable diligence, the circuit court stated, in part:
“Ward’s argument that he established diligence is also rejected. He contends that he undertook numerous and varied actions to remedy Pennington’s failure to file a Rule 32 petition by.writing repeatedly to this Court and the federal court requesting to have Pennington removed and substitute counsel appointed, and asking for copies of files and pleadings in an effort to prepare , a Rule 32 petition on his. own. Although Ward may have filed numerous pro se motions after he learned that Pennington had filed a federal habeas petition, he only had to file a form Rule 32 petition to stop the statute of limitations clock. Ward’s inaction is what distinguishes his case from the diligence demonstrated by the petitioner in Holland.”
(C. 22-23.)
In discussing this prong of the Ward III inquiry courts have stated:
“ ‘Due diligence ... does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make,reasonable efforts.’ Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002). ‘Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system.’ Id. (internal quotations omitted).”
Downs v. McNeil, 520 F.3d 1311, 1323 (11th Cir. 2008).
“ ‘The diligence required for equitable tolling purposes is reasonable diligence .,. not maximum feasible diligence.’ Holland [v. Florida], 560 U.S. [631] at 653, 130 S.Ct. 2549 [(2016)] (internal citations and quotation marks omitted) ....
“The Supreme Court in Holland found that a habeas petitioner had exercised reasonable diligence by writing his attorney ‘numerous letters seeking crucial information and providing direction’; ‘repeatedly contacting]-the state courts, their clerks, and the Florida State Bar Association’; and preparing ‘his own habeas petition pro. se and promptly fil[ing] it with the District Court’ on the day he discovered that his AEDPA [An-titerrorism and Effective Death Penalty Act of 1996] clock had expired. Id. In Socha [v. Boughton, 763 F.3d 674 (7th Cir. 2014)], we similarly held that a habeas petitioner had exercised'reasonable diligence by repeatedly writing his attorney requesting access to his file, pleading with the public defender’s office for help, and alerting the court ‘before the deadline arrived’ that he sought to preserve his rights. 763 F.3d at 687-88.”
Carpenter v. Douma, 840 F.3d 867, 870-71 (7th Cir. 2016).
“The diligence requirement ‘does not demand a showing that the petitioner left no stone unturned,’ Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011). Rather, ‘[t]o determine if a petitioner has been [reasonably] diligent in pursuing his petition, courts consider the petitioner’s overall level of care and caution in light of his or her particular circumstances.’ Doe v. Busby, 661 F.3d 1001, 1013 (9th Cir. 2011); see also Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) (‘Due diligence ... reqtdre[s] reasonable diligence in the circumstances.’). In other words, the diligence inquiry is fact-specific and 'depends on the circumstances faced by the particular petitioner; there are no bright line rules as to what conduct is insufficient to *503 constitute reasonable diligence. If a petitioner ‘did what he reasonably'thought was necessary to preserve his rights ... based on information he received then he can hardly be faulted for not acting more “diligently” than he did.’ Holmes v. Spencer, 685 F.3d 51, 65 (1st Cir. 2012).”
Munchinski v. Wilson, 694 F.3d 308, 330-31 (3rd Cir. 2012).
In a factually similar case, the United States' Court of Appeals for the Second Circuit stated:
“The district court found that Nickels was not diligent during this time because he could have ‘filed a “bare bones” petition and sought to amend it later.’ However, the district court erred in not considering what diligence was due from a person in Nickels’s circumstance—that is, a petitioner who was told by his counsel that the record was necessary for the completion of the petition. A duly diligent petitioner in this circumstance might reasonably think that such papers were necessary to filing, and thus devote his time to getting them back rather than preparing a new petition.
“Moreover, our case law suggests that a petitioner’s legal papers and access to them are not irrelevant to his ability to file. See Valverde [v. Stinson], 224 F.3d [129] at 133 [ (2d Cir. 2000) ]. (‘The intentional confiscation of a prisoner’s ha-beas corpus petition and related legal papers by a corrections officer is “extraordinary” as a matter of law.’) In that case we wrote, ‘a person is plainly “prevented” from filing a pleading for some period of time if he is deprived of the sole copy of that pleading, something that the petitioner asserts happened to him here.’ Id. at 134. While Nickels was not deprived of his actual habeas petition, he alleges he sent all of his legal materials to PSL [Pro Se Litigators], and that those documents were not returned after PSL declared bankruptcy, despite-his efforts to obtain them. In Tight of that, the district court erred in calling; Nickels’ failure to file upon learning of the bankruptcy a lack of diligence without considering the effect of PSL’s repeated admonitions that his. papers were necessary to filing.
“In addition, the record reflects that Nickels sought the assistance of the Law Library Officer and Personnel Administration at Attica where he was incarcerated. He also filed a complaint with the Attorney General, which was copied to the district court. At a minimum, .this suggests Nickels was diligent in trying to figure out how to proceed between the time he learned he would not receive a petition from PSL and the time he ultimately filed. To suggest that a petitioner is not -diligent in such circumstances when he does not’simply file a bare bones petition does-not appropriately take account of the fact that, in large part, habeas petitioners have but one bite at the apple. ‘[A] petitioner must navigate not-insignificant procedural complexities [in filing a habeas petition]. Mistakes can be costly, given the severe limitations that AEDPA [An-titerrorism and Effective Death Penalty Act of 1996] imposes on the filing of second or successive petitions.’ Harper v. Ercole, 648 F.3d 132, 140 (2d Cir. 2011) (internal citation and quotation marks omitted).”
Nickels v. Conway, 480 Fed.App’x 54, 58 (2d Cir. 2012) (not selected for publication in the Federal Reporter).
Here, we likewise find that Ward did not fail to exercise reasonable diligence merely because he failed to file a “form” Rule 32 petition within the requisite time period. As noted in Nickels, errors in filing postconviction petitions are costly and fre *504 quently bar relief in subsequent petitions. Ward, a death-row inmate, had given his file to his hired attorney, and his attorney had not returned those papers to him. The record clearly shows that Ward did not sit on his rights but that he repeatedly sought help in both state court and federal court.
“ When reviewing a circuit court’s denial of a Rule 32 petition, this Court applies an abuse-of-discretion standard.’” Shouldis v. State, 38 So.3d 753, 761 (Ala. Crim. App. 2008), quoting Whitman v. State, 903 So.2d 152, 154 (Ala. Crim. App. 2004). However, “when the facts are undisputed and an appellate court is presented with pure questions of law, that court’s review in a Rule 32 proceeding is de novo.” Ex parte White, 792 So.2d 1097, 1098 (Ala. 2001).
After reviewing, the extensive record in this case, we hold that the circuit court abused its discretion in declining to find that Ward satisfied the two-prong test articulated by the Alabama Supreme Court in Ward III and the United States Supreme Court in Holland v. Florida. Indeed, based on the above caselaw we hold that Ward established both extraordinary circumstances and reasonable diligence for the late filing of his postconviction petition attacking his capital-murder conviction and sentence of death. Accordingly, we hereby reverse the circuit court’s order dismissing Ward’s postconviction petition as untimely and remand this case to the Baldwin Circuit Court for further proceedings on Ward’s properly filed postconviction petition.
REVERSED AND REMANDED.
Kellum,. Burke, and Joiner, JJ., concur. Windom, P.J., recuses herself.

. Because the limitation period in Rule 32.2(c), Ala. R. Crim. P. was amended effective August 1, 2002, Ward had until August 1, 2003, to file a timely petition for postconvic-tiop relief.

. On remand, "[t]he circuit court was limited to the scope of [the Supreme Court's] remand order.' Hyde v. State, 894 So.2d 808, 810 (Ala. Crim. App. 2004). In Ward V, the Supreme Court limited the remand proceedings to the issue of equitable tolling. Thus, the circuit court correctly prohibited any amendment to Ward’s petition that addressed issues that were outside the scope of the Supreme Court’s remand instructions. .

. This petition contained numerous factual errors concerning Ward’s case. The first page states that a Mobile County grand jury indicted Ward for three counts of capital murder. However, Ward was indicted by a Baldwin County grand jury for violating § 13A-5-40(15), Ala. Code 1975, for murdering a child under the age of 14 years. (C.R. 1197.)

. A document from the Alabama State Bar attached as an exhibit to Ward’s amended petition shows that the State Bar declined to proceed on Ward’s complaint against Pennington. (C.R. 464.)

. Then Presiding Judge Samuel Welch dissented with an opinion, which Judge Windom joined. Judge Welch wrote that he did not disagree with the application of equitable tolling to the facts of the case but he disagreed that Patrick had proven his entitlement to equitable tolling merely on the face of his pleadings.'