# United States Court of Appeals

## For the First Circuit

No. 15-1216

ALEX HOLMES,

Petitioner, Appellant,

v.

LEWIS SPENCER, MAURA HEALEY,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Chief Judge,
Souter, Associate Justice,[*]
and Lipez, Circuit Judge.

Janet Hetherwick Pumphrey for appellant.
Christopher Hurld, Assistant Attorney General, with whom
Maura Healey, Attorney General of Massachusetts, was on brief, for
appellee.

May 6, 2016

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**.  Alex Holmes appeals the dismissal of his untimely habeas corpus petition, after the district court determined that there was no basis for equitable tolling of the limitations period.  We affirm.

**I**

This case has been here before, see Holmes v. Spencer, 685 F.3d 51 (1st Cir. 2012), and in presenting its background we borrow liberally from our earlier opinion.  Massachusetts charged Holmes with first-degree murder, and on May 1, 1998, he pleaded guilty to murder in the second degree in return for the mandatory sentence of life imprisonment with the possibility of parole.  He claims (in one version) that he offered the plea because his trial counsel told him that the prosecutor had proposed a private deal: if Holmes pleaded, and if the prosecutor sought and obtained information from him about others involved in the murder, he could reduce his sentence by filing a motion to revise or revoke under Massachusetts Rule of Criminal Procedure 29.  According to his testimony, he was led to believe this course of action was so imminent that he would be brought back for resentencing in about thirty days.

In June 1998, although he had not heard from the prosecutor, Holmes filed a Rule 29 motion that identified no underlying grounds and was accompanied by a similarly uninformative affidavit stating only that, "[a]t the appropriate

- 2 -

time, . . . I will request that this matter be brought forward and heard by the sentencing judge."  Both the motion and affidavit are boilerplate forms, typewritten documents with spaces to be filled in by hand.  When the case was first before us, Holmes said that this paperwork was given to all newly sentenced convicts on arrival at prison.  There was no evidence to this effect, however.

Holmes never requested that his Rule 29 motion be "brought forward" for a hearing.  But he claims that in June 2000, after two years of silence since filing the motion, he learned from a friend in the prison law library that the motion was futile: because second-degree murder carries a mandatory sentence of life imprisonment, the judge had no authority to "revise or revoke."

On learning this, Holmes did take action, first by renewing correspondence with his trial counsel, who denied that Holmes had made the plea deal solely on the prospect of filing a successful Rule 29 motion.  The lawyer maintained that he had advised Holmes to accept a proposal to plead to the lesser offense regardless of the prosecutor's possible request for information because, if convicted of first-degree murder, Holmes would face mandatory life imprisonment but without the possibility of parole. Counsel also denied having assured Holmes that the judge would grant a Rule 29 motion and contradicted any claim that the prosecutor had ever committed to use information obtained from Holmes.

After litigating unsuccessfully in the state courts, in 2008 Holmes filed a federal habeas corpus petition alleging, among other things, that his trial counsel was ineffective for inducing him to plead guilty on the assurance that he would be able to reduce his sentence through the Rule 29 process. The district court dismissed the petition as untimely under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1)(A).

On appeal, we upheld the district court's determination that Holmes's petition was untimely. All agreed that Holmes's conviction became final on May 1, 1998, and that (for reasons immaterial here) certain periods between 2000 and 2007 were excluded from the calculation. Among the disputed questions on appeal was whether the June 1998 filing of the Rule 29 motion also stopped AEDPA's limitations clock, under the provision that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." Id. § 2244(d)(2). We concluded that the barebones character of Holmes's Rule 29 motion failed to qualify it as "properly filed" and thus rendered it inadequate to toll the running of the limitations period under the terms of that provision.

We remanded, however, for the district court to consider whether the running time should nonetheless be tolled on equitable grounds. Given that equitable tolling requires a habeas petitioner to demonstrate as necessary conditions for relief that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented timely filing,[1] we mentioned what the district court might look for. We said that we were troubled "by the possibility that at the time Holmes filed his Rule 29 [m]otion, he was led to believe that his [m]otion was in fact properly filed." Holmes, 685 F.3d at 63. As to diligence, we reasoned that, "[i]f Holmes did what he reasonably thought was necessary to preserve his rights by filing a placeholder motion, based on information he received from prison officials, then he can hardly be faulted for not acting more 'diligently' than he did." Id. at 65. And as to the need to show extraordinary circumstances, we raised the possibility that, "[i]f in fact prison officials intentionally or inadvertently caused Holmes to believe that his filing was sufficient, this might qualify as an 'extraordinary circumstance.'" Id. In sum, we asked the district court to take into account "the reasons for Holmes's delay in requesting a

---

[1] Holmes addresses these conditions, not as mandatory, but as significant factors, citing Trapp v. Spencer, 479 F.3d 53 (1st Cir. 2007). But on this point Trapp has been overtaken by Holland v. Florida, 560 U.S. 631, 649 (2010), as most recently underscored by Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016).

hearing on his Rule 29 [m]otion as well as whatever information Holmes may have been given regarding the propriety of his Rule 29 [m]otion when he filed it in 1998." Id. at 67.

On remand, after taking evidence, the district court found equitable tolling unwarranted, owing to Holmes's failure to show either diligence or an extraordinary circumstance. Starting from the predicate that "Holmes expected to be brought back in to court within a month" after filing his Rule 29 motion, "[h]is complete lack of action or effort to research his legal status at all for two years after [its] filing" demonstrated a want of diligence. And as for the prison's possible influence on his behavior, the court found that Holmes "himself sought out the [Rule 29] form from the library and did not suggest anyone in the prison gave him advice regarding it." There being no extraordinary circumstance standing in Holmes's way, the district court explained, "[a]fter his initial filing, over the course of the two years before he took any action, [he] still had a wealth of opportunities to remedy any error and to verify the appropriate filing procedures (including opportunities to conduct his own independent research)." (internal quotation marks omitted). The court denied habeas relief, and Holmes appealed.

**II**

"We review the district court's decision to deny equitable tolling for abuse of discretion" in applying the two

- 6 -

necessary conditions already mentioned: the adequacy of the federal habeas petitioner's demonstration of diligence in pursuing his rights and the existence of some extraordinary circumstance standing in the way of timely filing his petition. Holmes, 685 F.3d at 62. Here, there was no abuse of discretion in the district court's conclusion that Holmes failed to satisfy either one.

On the matter of diligence, for two years after filing his Rule 29 motion with no response (despite Holmes's claimed expectation of relief within the month), he took no action; he made no effort to research the status of the motion and did not even try to ask his trial counsel what was going on. Holmes points out that it was not until June 2000 that he learned of his motion's futility. But this says nothing to explain his inaction in the lengthening silence after filing the motion that he allegedly expected would bring him back into court in a month.

The record equally well supports the court's conclusion that no extraordinary circumstances extenuated the delay, and its findings assuage the concerns that led us to remand. It was Holmes's prior claim that prison officials handed out boilerplate Rule 29 forms to all new inmates that led us to worry that the prison staff may have intentionally or inadvertently caused Holmes to believe that his mere filing was sufficient. But the district court found that Holmes himself sought out the Rule 29 form and

raised no suggestion that anyone in the prison gave him advice about it.

Before us, Holmes presses three claims of extraordinary circumstances: that he was affirmatively misled by both the prosecutor and his trial counsel, and that he had limited access to the prison law library. But we rejected the second and third claims the last time he was here. See id. ("The advice given to Holmes by his counsel, regardless of its level of alleged incompetence, did not stand in his way and prevent the timely filing of his habeas petition." (alterations and internal quotation marks omitted)); id. at 63 ("If we tolled AEDPA's limitation period every time a prisoner with no legal training had his library time strictly regulated, § 2244(d) might as well not exist; few prisoners are lawyers, and few prisons offer their occupants unfettered library access."). And the record belies the first claim, that the prosecutor led him astray. There is no evidence of any representation by the prosecutor directly to Holmes, and his trial counsel explained that he and the prosecutor never spoke of anything more than a chance of later sentence modification.

We can glean no relevant possibility in any of Holmes's subsidiary arguments.

## III

The judgment of the district court is AFFIRMED.