# United States Court of Appeals
## For the First Circuit

No. 18-1066

LARRY BLUE,

Petitioner, Appellant,

v.

SEAN MEDEIROS,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Thompson, Selya, and Lipez,
Circuit Judges.

Ashley P. Allen, with whom Patricia A. DeJuneas and Sibbison
& DeJuneas were on brief, for appellant.
Eva M. Badway, Assistant Attorney General, with whom Maura
Healey, Attorney General, was on brief, for appellee.

January 4, 2019

**THOMPSON**, **Circuit Judge**.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), establishes a one-year statute of limitations for a state prisoner to file a federal *habeas corpus* petition under 28 U.S.C. § 2254. The one-year period generally starts when a prisoner's conviction becomes final, but may be tolled, pursuant to the statute, during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2).

Petitioner Larry Blue, a Massachusetts prison inmate, filed a petition for *habeas corpus* relief which the district court dismissed as time-barred under AEDPA's statute of limitations. Petitioner now seeks reconsideration of that ruling based on two tolling theories. First, Petitioner argues that the statute of limitations should be statutorily tolled during the month-plus-long pendency of his motion to stay the execution of his sentence, because that motion, he urges, constitutes an application for collateral review under § 2244(d)(2). Second, Petitioner argues, essentially, that unique circumstances surrounding his conviction justify equitable tolling of the time between the finality of his Commonwealth convictions and the filing of his *habeas* petition. For reasons explained below, we reject these arguments and affirm the dismissal of Petitioner's *habeas corpus* petition.

## I.  Background

Because dates are crucial to our evaluation of Petitioner's claims, we ask the reader's patience as we detail the travel of the proceedings below.  On August 18, 2010, following a trial by jury, Petitioner was convicted of multiple Massachusetts state law crimes, including drug trafficking, drug possession, and unlicensed firearm and ammunition possession.  Thereafter, he pleaded guilty to additional related charges and was handed a cumulative sentence of up to ten years and a day to serve.

Petitioner pursued various avenues of post-conviction relief in the Commonwealth courts.[1]  On June 14, 2012, Petitioner filed a direct appeal of his convictions, based in part on arguments previously raised and rejected by the trial court that there were defects in the search warrants that led to his arrest. Additionally, Petitioner premiered a new argument challenging the constitutionality of Massachusetts's gun licensing regime.

While Petitioner's appeal was pending, revelations of widespread misconduct at the Commonwealth's crime lab, the William A. Hinton State Laboratory Institute, came to light with state-employed chemist Annie Dookhan in the maelstrom of the scandal. In response to these disclosures, in August 2012, Massachusetts's

---

[1] First, he filed a motion for a new trial, based on his assertion that the court reporter was unable to produce a full transcript of his trial.  This motion was denied the following day when the parties collaborated to reconstruct the missing record.

governor shuttered the lab and ordered an independent investigation.[2] Dookhan, after being hit with multiple indictments for falsifying drug test results, lying about her credentials, and perjuring herself in court (including during Petitioner's trial), eventually pled guilty to twenty-seven counts on November 22, 2013.

Meanwhile, the Appeals Court of Massachusetts denied Petitioner's direct appeal on September 27, 2013. Commonwealth v. Blue, 994 N.E.2d 817 (Table), 2013 WL 5377118 (Mass. App. Ct. 2013). First, it cited its agreement with the trial court's reasoning for the denial of Petitioner's search warrant suppression motions. And next, it pointed out the futility of Petitioner's constitutional challenge, noting the state's gun licensing regime had already been given the green light by the Massachusetts Supreme Judicial Court ("SJC"). Id. Hoping to change minds, Petitioner filed a motion for rehearing, but the appeals court promptly denied it.

Soldiering on, Petitioner sought further appellate review with the SJC in October 2013. However, that application was summarily denied without discussion on November 21, 2013. Commonwealth v. Blue, 998 N.E.2d 342 (Mass. 2013) (Table). Ninety

---

[2] Not long after the Dookhan misconduct was made public, an entry in the trial court docket reflects that Petitioner filed a motion to stay the execution of his sentence on March 12, 2013. The docket notation reads "(Drug Lab)"; the motion was withdrawn in June 2013.

- 4 -

days later, on February 19, 2014, Petitioner's convictions became final; that is the moment the AEDPA statute of limitations clock began to tick.[3]

In the wake of the Dookhan fiasco, Petitioner filed with the trial court a second motion to stay the execution of his sentence, pursuant to Massachusetts Rule of Criminal Procedure 31 ("Rule 31").[4]  In that February 21, 2014 filing he asserted his belief that Dookhan's misconduct would likely result in the grant of a new trial on all charges given (1) the unreliability of the laboratory testing supporting his drug convictions and (2) the overall taint Dookhan's perjured testimony cast on his convictions, due to the prosecutor weaving together the drug dealing and the gun possession throughout the trial.  In a memorandum in support of his stay motion, Petitioner announced his intention to file a renewed motion for a new trial "shortly," based on Dookhan's perjury and other grounds.

---

[3] Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) ("The SJC affirmed [the] convictions on March 11, 1992; her convictions became final ninety days thereafter.").

[4] The Commonwealth's investigation into the Hinton Lab came to an end, concluding that, while Dookhan was "the sole bad actor" at the lab, poor and inadequate training, protocols, and management had allowed her conduct to go undetected for years.  It was conservatively estimated that Dookhan worked on close to 34,000 cases during her years at the lab.  Commonwealth v. Charles, 992 N.E.2d 999, 1003 (Mass. 2013).

Back at the SJC, while Petitioner's motion to stay was pending, the Commonwealth high court weighed in on the Dookhan debacle: in cases where Dookhan had served as a primary or secondary chemist for drug analysis, all defendants were entitled to a conclusive presumption that her conduct was egregious and attributable to the Commonwealth. Commonwealth v. Scott, 5 N.E.3d 530, 535 (Mass. 2014). That presumption notwithstanding, soon after the Scott opinion issued, Petitioner's motion for a stay of the execution of his sentence was denied on March 27, 2014. The trial court found that Petitioner's firearms convictions were unaffected by Dookhan's misconduct and as such, he was unlikely to receive a new trial.

Undeterred, on May 5, 2014, Petitioner filed a second motion for a new trial based on two theories. First, he framed the revelation of Dookhan's perjury as "newly-discovered evidence," casting doubt on the fairness of his conviction. (For all intents and purposes, this taint argument is the same one that had just been rejected by the court in response to his stay motion.) His second argument, ineffective assistance of counsel, was essentially a repackaging of the earlier defective search warrant claims.[5]

---

[5] Petitioner alleged that the warrants failed to establish timely probable cause because of their technical shortcomings, and that his attorney was ineffective for failing to properly argue

- 6 -

On January 20, 2015, acting on Petitioner's new trial motion, the trial court granted it as to the drug charges, and denied it as to the gun charges. Commenting on the drug convictions, the court conceded that, even though extensive evidence supported Petitioner's drug charges aside from Dookhan's perjured testimony, her testimony had, nonetheless, tainted the drug convictions. As for the gun charges, the court found no connection between Dookhan's testimony and those convictions. Finally, the trial court dismissed the ineffective assistance claim, describing it as not distinct from Petitioner's prior search warrant claims, and writing:

> [T]he Appeals Court implicitly rejected the defendant's instant claim . . . and made rejection explicit when it refused the defendant's petition for rehearing. The issue is settled and need not be considered on its merits here.

Two days later Petitioner appealed the partial denial to the appellate court, and sought further review after this first appeal was denied. Commonwealth v. Blue, 46 N.E.3d 114 (Table), 2016 WL 757758 (Mass. App. Ct. 2016). The Commonwealth *nolle prossed* the drug charges at the end of January 2015.[6] And, on April 27, 2016,

---

the defects -- an interpretive gloss that he had not explicitly raised before.

[6] "*Nolle prossed*" comes from the Latin phrase "n*olle prosequi*," translated as "we shall no longer prosecute." In this context, it means that the Commonwealth dropped all the drug charges against Petitioner.

- 7 -

the SJC entered a final denial of Petitioner's application for further appellate review of his motion for a new trial.[7]

Almost eleven months[8] later, on March 20, 2017, Petitioner filed his federal petition for a writ of *habeas corpus*, premised solely on his allegations of ineffective assistance of counsel.[9] On the motion of Respondent Norfolk prison superintendent Sean Medeiros, the district court dismissed the petition as time-barred under AEDPA. Blue v. Medeiros, No. 17-cv-10464-ADB, 2017 WL 5297910, at *1 (D. Mass. Nov. 13, 2017). In so doing the district court held that Petitioner's motion to stay the execution of his sentence did not toll AEDPA's one-year time limit, under 28 U.S.C. § 2244(d)(2), because it was not an "application for . . . collateral review." The court held further that Petitioner was not entitled to equitable tolling because the issues created by the Hinton Lab misconduct did not impose a bar

---

[7] There is no dispute that the AEDPA statute of limitations was tolled for the almost two-year period that his motion for a new trial was pending, from May 5, 2014, through April 27, 2016.

[8] 327 days, to be precise.

[9] Again, Petitioner alleged that the search warrants underlying his arrest and conviction failed to establish probable cause, and that trial counsel failed to argue this effectively. These arguments are not before us in this appeal. Peralta v. United States, 597 F.3d 74, 83 (1st Cir. 2010) (general rule is that "a court of appeals should not consider the merits of an issue advanced by a habeas petitioner unless a COA [certificate of appealability] first has been obtained *with respect to that issue*" (quoting Bui v. DiPaolo, 170 F.3d 232, 237 (1st Cir. 1999))).

to Petitioner filing a motion for a new trial concurrently with his motion for stay of execution (recall Petitioner's stay motion was filed on February 21, 2014, while his new trial motion was not filed until May 5, 2014); and because, even after his motion for a new trial was denied and the Commonwealth had abandoned the drug charges, Petitioner allowed eleven months to pass by before filing the petition for the writ of *habeas corpus*.

In his present appeal, Petitioner advances two arguments relative to the timeliness of his *habeas* petition; we take each in turn. Because the district court denied Petitioner relief "on a procedural ground without taking evidence," we apply *de novo* review. Holmes v. Spencer (Holmes I), 685 F.3d 51, 58 (1st Cir. 2012) (quoting Wood v. Spencer, 487 F.3d 1, 3 (1st Cir. 2007)).

## II. Statutory Tolling

First, Petitioner argues that his motion to stay the execution of his sentence tolled AEDPA's statute of limitations, because it is a properly filed application for "collateral review" as contemplated by 28 U.S.C. § 2244(d)(2). In support of his assertion that "the plain meaning" of AEDPA's tolling provision "includes post-conviction motions [like a motion to stay] heard by the trial judge," Petitioner cites Wall v. Kholi (Kholi III), 562 U.S. 545 (2011). To better understand Petitioner's argument, a brief discussion of Kholi is in order.

- 9 -

Khalil Kholi was convicted by the Rhode Island Superior Court of repeated acts of sexual assault on his two young step-daughters and received two consecutive life sentences. He appealed the convictions and simultaneously filed a motion to reduce his sentence; both were unsuccessful. State v. Kholi, 706 A.2d 1326 (R.I. 1998); State v. Kholi, 672 A.2d 429 (R.I. 1996).

Kholi then filed a petition for a writ of *habeas corpus* in the federal district court, which denied relief after finding the petition time-barred by AEDPA. Kholi v. Wall (Kholi I), No. 07-346S, 2008 WL 60194 (D.R.I. Jan. 3, 2008). In so concluding, the court held that Kholi's motion to reduce his sentence, brought pursuant to Rule 35 of Rhode Island's criminal procedure rules,[10] did not constitute an application for "collateral review" under AEDPA, and thus did not toll the limitations period. Instead, the court reasoned that "a motion for correction or reduction of sentence contemplates the defendant returning to the same court, and pleading for mercy before the same judge that imposed the original sentence and thus, is not 'collateral' within the meaning of AEDPA." Id. at *3 (citing Walkowiak v. Haines, 272 F.3d 234, 237-38 (4th Cir. 2001)).

Kholi appealed and we reversed, holding that "a state post-conviction motion for a sentence reduction, in the nature of

_____

[10] R.I. Super. Ct. R. Crim. P. 35 (a).

a plea for discretionary leniency, comes within the [AEDPA] statutory sweep."  Kholi v. Wall (Kholi II), 582 F.3d 147, 156 (1st Cir. 2009).  In reaching this conclusion, we stressed the importance of encouraging state prisoners to exhaust state court remedies before seeking federal *habeas* review.  Id. at 155.

The state of Rhode Island sought further review and the Supreme Court granted *certiorari.*  Kholi III, 562 U.S. at 551-53. In affirming our ruling the Court carefully parsed the AEDPA tolling language.  Defining the phrase "collateral review" in the AEDPA context, the Court stated, "[v]iewed as a whole, then, 'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process."  Id. at 553. In considering whether a Rule 35 motion would trigger collateral review, the Supreme Court analyzed the meanings of the words "collateral" and "review." Id. at 555-56.

Reasoning that a motion to reduce the sentence was traditionally viewed as a collateral challenge, and was in no instance a part of the direct review process, the Court quickly determined that the motion was collateral.  Id. at 555.  The Court then moved on to examine its understanding of the word "review." Based on the operation of the state's criminal rule, the motion would require a "judicial reexamination of the sentence to determine whether a more lenient sentence is proper" and it

- 11 -

therefore resulted in a review. Id. Consequently, the Court determined that Kholi's motion to reduce his sentence constituted an application for collateral review which triggered AEDPA's tolling provision. Id. at 556; see also Holmes I, 685 F.3d at 60; Kholi II, 582 F.3d at 153 ("Taking into account this quotidian understanding, it seems self-evident that a motion for a sentence reduction in the nature of a plea for discretionary leniency is a motion that seeks post-conviction 'review' of a sentence and, thus, is a motion that falls squarely within the plain meaning of section 2244(d)(2).").

As our Petitioner would have it, his Massachusetts Rule 31 motion to stay execution of sentence is no different from the Rule 35 motion discussed in Kholi III, and as such the district court erred when it deemed AEDPA's tolling provision not triggered. However, while we agree with Petitioner that his motion is, assuredly, a collateral one, we find it does not have the power to generate a review. As the government correctly suggests, we must turn to Massachusetts law to explain why. Carey v. Saffold, 536 U.S. 214, 223 (2002) ("[F]or purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions . . . ."); Lewis v. Jeffers, 497 U.S. 764, 780-81 (1990) (urging deference to a state court's "application of its own law" in *habeas* context).

- 12 -

Rule 31 allows a trial judge or a single justice of the Commonwealth's appellate court to make a discretionary ruling staying the imposition of a sentence during the pendency of an appeal.[11] While the ruling on the stay will not be reversed absent an abuse of discretion, the judge generally requires a demonstration that the defendant has a reasonable likelihood of success on appeal. See Commonwealth v. Levin, 388 N.E.2d 1207, 1208 (Mass. App. Ct. 1979). That means evaluating whether or not the appeal is frivolous, or whether it is "an appeal which presents an issue which is worthy of presentation to an appellate court, one which offers some reasonable possibility of a successful decision in the appeal." Id. at 1209. More recently, the SJC has described this analysis as a "pure question of law or legal judgment," which in no way prejudges "the merits of the defendant's direct appeal." Commonwealth v. Mattier, 49 N.E.3d 227, 228-29 (Mass. 2016) (quoting Commonwealth v. Allen, 392 N.E.2d 1027, 1033 (Mass. 1979)).[12]

We have noted in the past that not all filings by a criminal defendant which seek to advance a challenge to a judgment

---

[11] The order is temporary and automatically expires upon affirmation of the conviction, unless it is extended by the appellate court. It may also be revoked. Rule 31(a), (b).

[12] In addition to the merits evaluation, the judge entertaining the motion must also consider issues relating to security, such as the defendant's risk of flight or likelihood of committing new criminal acts. Levin, 388 N.E.2d at 1210.

- 13 -

of conviction constitute a collateral review for AEDPA purposes. Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) (petition for extraordinary relief not application for collateral review); Voravongsa v. Wall, 349 F.3d 1, 7 (1st Cir. 2003) (*pro se* motion for appointment of state post-conviction counsel not collateral review); see also Bridges v. Johnson, 284 F.3d 1201, 1203 (11th Cir. 2002) (application before a state sentence review panel not collateral review); Adeline v. Stinson, 206 F.3d 249, 252 (2d Cir. 2000) (motion to revive an appeal not collateral review). Similarly here, from our perspective, the Rule 31 screening process lacks the indicia of a "review" for this reason: Even though a judge must take a peek at the underlying claim to see if the merits are hopeless, she has no authority to either alter the judgment or change the sentence. See Kholi II, 582 F.3d at 151 (in the typical case, application for post-conviction relief that "does not seek to alter (or even to reexamine) the judgment" does not toll statute).

For these reasons, after a fresh review of Petitioner's claims, we hold that a motion to stay the execution of a sentence, under Rule 31, does not constitute a motion for collateral review, and its filing does not trigger AEDPA's tolling provisions.[13]

---

[13] Even if the statute of limitations were tolled during the pendency of his motion to stay the execution of his sentence, he still goes over the statutory time limit. He has a short two days between the date his convictions became final and the date he

- 14 -

## III. Equitable Tolling

Petitioner's second argument -- that equitable tolling applies to his *habeas* filing -- is grounded in principles of equity and fairness, and is primarily focused on the disruption in the Commonwealth's administration of justice caused by Dookhan's deceitful misconduct.[14] In claiming that his petition for *habeas corpus* relief should be permitted to go forward, Petitioner offers the following argument: "The lower court presumed that equitable tolling can only apply to the time immediately preceding the filing of the habeas corpus petition, rather than to any period of time after a conviction becomes final. . . .As far as petitioner is aware, there is no requirement that the petitioner show a permanent impediment from filing or to justify the year in which petitioner has to file his application for a writ of habeas corpus." Petitioner's argument, then, seems to have two parts which go like this. First, he says that the 75 days between February 19, 2014, the date his convictions became final, up to May 5, 2014, when he filed his motion for a new trial, must be equitably tolled because

---

filed his motion for a stay. Then, 39 days elapse between the denial of his motion to stay and the filing of his motion for a new trial. If you add those 41 days to the 327 days he waited between the final exhaustion of all state court review and the date he filed the present writ, you get 368 days -- three days over the statutory time limit.

[14] As mentioned earlier, based on <u>Scott</u>, 5 N.E.3d at 535, this conduct may be attributed to the Commonwealth.

during this time he was diligently pursuing state-court relief, and yet was thwarted by the difficulties posed by the Hinton Lab investigation.  As he tells it: "The magnitude of the problem effectively reopened and called into question thousands of convictions.  What followed were delays in post-conviction hearings, discovery issues, and an on-going, ultimately fifteen-month, investigation by the Office of the Inspector General into the Hinton State Drug Laboratory that concluded on March 4, 2014."

Second, as for the time from April 27, 2016 to March 20, 2017, when Petitioner filed his *habeas* petition, he seems to be contending that this period should be excluded altogether from our equitable tolling analysis.  We consider Petitioner's contentions, keeping in mind the guiding principles discussed next.

To establish a basis for equitable tolling, a *habeas* petitioner must demonstrate that he or she has diligently pursued her rights, but some extraordinary circumstance, or obstacle, prevented timely filing.  Holland v. Florida, 560 U.S. 631, 649 (2010); Holmes I, 685 F.3d at 62.  The diligence prong covers those affairs within the petitioner's control, while the extraordinary-circumstances prong covers matters outside his control.  Menominee Indian Tribe of Wis. v. United States, 136 S. Ct. 750, 755-57 (2016).  It is up to the petitioner to establish "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing."

- 16 -

Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). Additionally, "we apply equitable tolling on a case-by-case basis, avoiding mechanical rules and favoring flexibility." Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 (1st Cir. 2011). That said, equitable tolling is applied infrequently, Holmes I, 685 F.3d at 62, and abuse-of-discretion is the lens through which we review an equitable tolling decision, Holmes v. Spencer (Holmes II), 822 F.3d 609, 612 (1st Cir. 2016). This standard of review is nuanced; "within it, abstract questions of law are reviewed de novo, findings of raw fact are reviewed for clear error, and judgment calls receive a classically deferential reception." Holmes I, 685 F.3d at 62 (quoting Riva v. Ficco, 615 F.3d 35, 40 (1st Cir. 2010)).

In support of his two-part equitable tolling theory (to remind the reader: the period between the date of his final conviction and the date he filed his motion for a new trial should be equitably tolled in full, and the eleven-month post new trial denial period should be ignored altogether), Petitioner cites to Holmes I. Accordingly, closer scrutiny of that case is warranted.

In Holmes I, *habeas* petitioner Holmes sought both statutory and equitable tolling: statutory for a period during

- 17 -

which his motion to revise or revoke his sentence was pending;[15] equitable for the same period based on the obstacles imposed by his incarceration, and by the incorrect legal filing he made in reliance on misleading advice from his lawyer during plea bargaining. Holmes I, 685 F.3d at 55-56. On appeal this court affirmed the district court in part, agreeing that, while Holmes's motion to revise or revoke his sentence was in fact an application for collateral review under AEDPA (based on the newly-minted Kholi III decision), it still was not "properly" filed under Massachusetts law (his filing did not specify the grounds upon which the motion was based as Rule 29 requires)[16] and so did not trigger the statutory tolling mechanism within the meaning of 28 U.S.C. § 2244(d)(2). Id. at 60-61. However, we remanded the matter to the district court to review its equitable tolling ruling, pointing out that Holmes's belief that he had in fact properly filed his motion to revise or revoke his sentence might,

---

[15] Holmes's motion was brought pursuant to Massachusetts Rule of Criminal Procedure 29, a rule indistinguishable from Rhode Island's Rule 35 discussed in Kholi III.

[16] An application is "properly filed" for AEDPA purposes "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Holmes I, 685 F.3d at 67 (quoting Artuz v. Bennett, 531 U.S. 4, 8 (2000)).

after Kholi III, provide an equitable basis for excluding the time the motion was pending.[17]  Id. at 63-66.

Petitioner is correct that our Holmes I decision spends much time and analysis scrutinizing the almost nine-year period between Holmes's guilty plea and the final denial of reconsideration from the Commonwealth court, during which time he argued that he faced extraordinary obstacles (a lot was going on during those nine years).  Then, extrapolating from the focus of that discussion, Petitioner posits that the additional seven-month period between the final ruling by the Commonwealth court and the date Holmes filed his petition for *habeas corpus* must not have been relevant to our equitable tolling analysis.  "There was no weight given to, or even mention of, the seven months it took [Holmes] to file his habeas petition after his conviction became final," Petitioner writes in his brief.  Therefore, according to Petitioner, it logically follows that in his case, the eleven-month period between the conclusion of the Commonwealth court review and the filing of his *habeas* petition is not relevant to

---

[17] This court rejected Holmes's arguments that allegedly bad advice from his lawyer, coupled with the disadvantages of incarceration, justified equitable tolling, suggesting *sua sponte* a third ground for equitable tolling instead.  As it turned out, on remand, the district court held that there was no basis for equitable tolling and again denied Holmes's petition as untimely. The ruling was affirmed by this court in Holmes II.  822 F.3d at 612.

- 19 -

our assessment of extraordinary circumstances or diligence when it comes to an equitable tolling analysis.

Unfortunately, Petitioner misconstrues our Holmes I rationale. A careful read makes it clear that we considered the entire period leading up to the filing of the *habeas* petition when we wrote, "[t]he timeliness of Holmes's federal habeas petition, then, hinges on whether there are any grounds for excluding at least twenty-two of the remaining thirty-four unaccounted months between May 1, 1998 [the date of Holmes's guilty plea] and April 9, 2008 [the filing date of the *habeas* petition]." Id. at 57. Of course, given the procedural intricacies that animated Holmes's journey through the Commonwealth criminal justice system, we had reason to more closely examine the months during which Holmes claimed he was prevented by circumstances outside of his control from filing his *habeas* petition; but unquestionably, as clearly noted in our decision, the full period was taken into account in calculating the operation of the AEDPA time limit. Id. at 57-61. Thus, with Holmes I's timing calculus properly understood, we return to Petitioner's argument.

To briefly recap the timeline: approximately three years and a month went by between the date Petitioner's convictions became final and the date he filed his *habeas* petition.[18] After

---

[18] In its argument on equitable tolling, the government comes up with a different set of calculations. The government starts

- 20 -

Petitioner's motion for a new trial was finally denied, eleven months went by before the present motion got filed. Even if we were to accept Petitioner's argument that the entire Dookhan debacle posed an insurmountable obstacle to Petitioner's filing a timely *habeas* proceeding prior to the SJC's final resolution of his motion for a new trial on April 27, 2016, he nevertheless can point to no fact which demonstrates any obstacle, extraordinary or otherwise, that hindered his filing of a *habeas* petition during the final eleven months. Nor can he point to any behavior on his part that would demonstrate reasonable diligence in pursuing his rights during the final eleven months. When Petitioner's motion for a new trial was denied, it should have been clear to him that all state-court avenues for relief had been exhausted. That is the moment he needed to move swiftly to preserve his federal rights as the Hinton Lab misconduct could no longer be described as

_____

the clock on November 21, 2013, the date that Petitioner's application for further state-level appellate review was denied. The government concludes then that 165 days elapsed before Petitioner filed his motion for a new trial. This court has generally determined that the judgment becomes final after an additional ninety days have elapsed to allow for the filing of a petition for *certiorari*, see Neverson v. Farquharson, 366 F.3d 32, 36 (1st Cir. 2004), starting the AEDPA clock then after that ninety-day period. With its argument, the government seeks to underscore that the Petitioner also had this ninety-day period available during which he might have filed his motion for a new trial, thereby undermining Petitioner's diligence argument. The government does not press an argument about this clock-starting date, and, in any case, this discrepancy is not determinative of the outcome.

- 21 -

impeding his ability to seek post-conviction review. See Neverson v. Farquharson, 366 F.3d 32, 44 (1st Cir. 2004). As the government correctly points out, the Commonwealth *nolle prossed* Petitioner's drug charges in January 2015. As these were the only charges directly affected by Dookhan's malfeasance, the putative obstacle posed by the Hinton Lab issues dematerialized over a year before his motion for a new trial was denied. Petitioner's argument that the gun-related convictions were tainted by the prosecutor's closing remarks at trial (connecting the drugs with the gun) had been repeatedly rejected by the Commonwealth courts by April 2016 -- twice by the trial court, once by the appellate court, and finally by the SJC. As a result, Petitioner's hope, or misguided belief, that this theory might provide him a lifeline could no longer be reasonably understood as an obstacle preventing him from pursuing his federal remedy.

## IV. Conclusion

Because we find that Petitioner's motion to stay the execution of his sentence was not a request for collateral review and so did not toll the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act, and because we find no reason to disrupt the district court's discretionary ruling on equitable tolling, we affirm the dismissal of Petitioner's petition for a writ of *habeas corpus* as time-barred.